LAKESHORE DEVELOPMENT CORPORATION, Respondent, v. PLAN COMMISSION OF VILLAGE OF OCONOMOWOC LAKE, Appellant.

*January 13—February 7, 1961.*

For the appellant there were briefs by *Edwin P. Wiley, William J. Kiernan, Jr.,* and *Foley, Sammond & Lardner,* all of Milwaukee, and oral argument by *Mr. Wiley* and *Mr. Kiernan.*

For the respondent there were briefs by *Charles J. Herro* of Oconomowoc, attorney, and *Robert D. Sundby* and *Melli & Sundby* of counsel, all of Madison, and oral argument by *Mr. Robert D. Sundby* and *Mr. Herro.*

HALLOWS, J. The appellant contends by its motion to quash it is challenging the jurisdiction of the trial court over the subject matter of the proceeding on the ground the rejection is not appealable because it was only an advisory opinion and on the ground the respondent was not an aggrieved person entitled to an appeal by certiorari.

The preliminary question to be decided is whether in this certiorari proceeding such matters can be raised by a motion to quash. Appellant argues the question of jurisdiction of the court may be put in issue by this motion and relies on *State ex rel. Anderson v. Timme* (1888), 70 Wis. 627, 36 N. W. 325; *State ex rel. Carter v. Rosenthal* (1923),

179 Wis. 243, 191 N. W. 562; *State ex rel. Wasserman v. Cooper* (1930), 201 Wis. 359, 230 N. W. 50; *State ex rel. Schaefer v. Schroff* (1904), 123 Wis. 98, 100 N. W. 1030. In all four of these cases a return was made to the writ and the question of jurisdiction appeared in the record. It is not clear in some of these cases how the question was raised. However, all of these cases involved the common-law writ of certiorari.

Respondent argues that such matters cannot be raised on a motion to quash because it is, in effect, a demurrer and relies on *State ex rel. Badtke v. School Board* (1957), 1 Wis. (2d) 208, 83 N. W. (2d) 724, and *State ex rel. James L. Callan, Inc., v. Barg* (1958), 3 Wis. (2d) 488, 89 N. W. (2d) 267. The *Callan Case* involved a writ of mandamus and sec. 293.01, Stats., expressly provides a motion to quash the writ shall be deemed a demurrer. There is no comparable statute applying to certiorari. The *Badtke Case* involved a common-law writ of certiorari and in reference to such writs, this court repeated what had often been stated, that a motion to quash was, in effect, a demurrer, which questioned the sufficiency of the facts appearing in the record and could go no further. Numerous cases involving common-law writs were cited and discussed.

There is also some authority for the rule that before the return to a writ of certiorari is made, the proper motion is one to supersede the writ, and a motion to quash may only be made after the return to the writ and before hearing thereon. See *State ex rel. Dalrymple v. Milwaukee County* (1883), 58 Wis. 4, 16 N. W. 21; *State ex rel. Flint v. Fond du Lac* (1874), 35 Wis. 37; *State ex rel. Gray v. Oconomowoc* (1899), 104 Wis. 622, 80 N. W. 942; *State ex rel. Ellis v. Thorne* (1901), 112 Wis. 81, 87 N. W. 797. However, a motion to quash in modern practice has been used to test more than the sufficiency of the petition and of the writ prior to the return.

The writ of certiorari at common law was limited in scope and a motion to quash, either before or after the return to the writ was made, usually raised only questions of jurisdiction or excess power set forth as errors in the petition although other errors might appear in the return. Ferris, Extraordinary Legal Remedies, p. 204, sec. 178. The return was taken as conclusive if responsive to the petition and could not be impeached by collateral affidavits. After the return was made the court could dismiss or quash the writ or enter a judgment of affirmance.

The scope and purpose of the writ of certiorari has been enlarged by statute and it is now used as a method of appeal to determine not only the jurisdiction of a municipal board or agency but also to review the action of such a board as arbitrary, unreasonable, or discriminatory and sometimes to decide the merits of the action. Prior to 1955 there was no provision for the use of certiorari to appeal a rejection of a plat to subdivide land. By ch. 570, Laws of 1955, sec. 236.13 (5), Stats., 27 W. S. A., p. 475, was created which provided for an appeal from an objection to a plat or a failure to approve a plat in the manner set forth in sec. 62.23 (7) (e) 10 to 15, 9 W. S. A., p. 414. This latter section deals with the use of a writ of certiorari to review decisions of the boards of appeal and other municipal agencies in zoning matters and requires the agency to return the papers acted upon. It also permits the return to include such other facts as may be material to show the grounds of the decision appealed from. The statute further enlarges the scope of a writ by providing that the court may take such testimony as is necessary for the proper disposition of the matter on appeal. The scope of the writ is no longer confined in these matters to a review of the record when the trial court hears additional evidence. The section gives the court the power to reverse or affirm, wholly or in part,

and to modify the decision. Such power is necessary when additional testimony is taken.

It is important in considering cases to determine whether the decision involved a common-law writ or a writ as enlarged and modified by statute. We hold the motion to quash the writ of certiorari was permissible procedure. Its function in this case was not to raise the question of sufficiency of the petition but to raise a question of the jurisdiction of the court. This question might have been raised on the return. We see no reason why the court's jurisdiction to hear the writ may not be challenged by a motion to quash before the return.

We do not agree with appellant, there was no objection or rejection of the preliminary plat. The petition for the writ stated a preliminary plat was submitted to the appellant. The appellant in its written objections referred to the plat as being a preliminary plat in these words,

". . . we have chosen to consider such preliminary plat for approval pursuant to paragraph 236.11 (1) (a), Wisconsin statutes and as required by section 5.05, village ordinance No. 7."

The preliminary plat submitted by the respondent met the requirements and definition of a preliminary plat. A preliminary plat need not meet all the requirements of a final plat other than the quality and size of paper and other formal requirements for a final plat.

A preliminary plat is defined in sec. 236.02 (6), Stats., 27 W. S. A., p. 462, as a map showing the salient features of a proposed subdivision submitted to an approving authority for the purpose of preliminary consideration. A nonexistent artificial lake was shown on the plat as a proposal. There is no merit in the appellant's argument that all salient features must be physical facts in existence at the time the preliminary plat is submitted. It is common knowledge and

a necessity that the preliminary plat show both the existing physical features of the subdivision and the proposed roads, relocation of existing roads, and proposed changes in the existing physical features of the land. A preliminary plat is not necessarily a division of land as it physically exists at the time the preliminary plat is submitted. A layout of the lots may be based upon proposed changes in topography. Layout requirements can be determined from such a preliminary plan. Approval may be given on condition such changes are made in accordance with and as shown on the preliminary plan. The projection of the future in a preliminary plan does not destroy the nature of the plat as preliminary but confirms it.

The position of the appellant is unrealistic, unsound, would destroy one of the purposes of a preliminary plat, and would render it impossible to subdivide many parcels of land. Sec. 236.11 (1) (a), Stats., 27 W. S. A., p. 471, requires only that a preliminary plat shall be in sufficient detail to determine whether the final plat will meet layout requirements. It is true if the final plat conforms substantially to the layout shown in the preliminary plat including the conditions of the approval, the final plat is entitled to be approved in respect to layout. A subdivider now has six months instead of sixty days within which to meet the requirements of and submit a final plat for approval. These changes in the law were for the benefit of the subdivider and to increase the flexibility of the platting laws. The old tentative plat no longer exists.

The legislative history of the act amending the platting laws in 1955 is of some significance in determining what the legislative intent was in making the amendments. A note to sec. 236.11 (1) (a), Stats., contained in Bill No. 20, S., 1955, which amended ch. 236 (ch. 570, Laws of 1955), states:

"The purpose of a preliminary plat is to give the approving authority an idea of the plan for the subdivision and to enable it to give the subdivider some assurance that he is proceeding in an acceptable manner. Therefore, sub. (1) (a) differs markedly from sec. 236.10 (1) of the present statutes which requires the tentative plat to comply with the requirements for a final plat. Sub. (1) (a) of the proposal requires only that the plat be in sufficient detail to show the proposed layout."

In Vol. IV, 1955 Report, Wisconsin Legislative Council, Subdivision and Platting of Land, Objective V, p. 20, indicates the legislative purpose as follows:

*"Recommendation . . .*
"(a) The preliminary plat should be required to contain only enough information to enable the reviewing authority to determine if the subdivider's plan meets with its approval. See sec. 236.11 (1) (a) of the proposed revision. The purpose of a preliminary plat is to assure the subdivider that he is proceeding in an acceptable manner before he spends the money to have a final plat made. Present statutes require that the preliminary plat (called a tentative plat, sec. 236.10, Stats. 1953) comply with the same requirements as a final plat. This defeats the purpose of having a preliminary plat."

A preliminary plat means "preliminary" and need not meet the same requirements of a final plat. We decide what the respondent submitted constituted a preliminary plat and the action of the appellant was a rejection thereof and the proper subject of appeal.

The appellant also contends that the court had no jurisdiction because the respondent had no right to appeal as an aggrieved person under sec. 236.13 (5), Stats. The next premise is the respondent is not an aggrieved person because it was not the owner of all the land in the proposed subdivision and only owners or their agent may subdivide land and appeal.

If the legislature meant only owners of the land sought to be subdivided or their agent could have an appeal, it ought to have used clearer language than "a person aggrieved" in sec. 236.13 (5), Stats. If an appeal could only be taken from the rejection of a final plat there might be some merit to the argument, but an appeal is not restricted to a final plat. True, a final plat must contain a certificate by the owner of the land that he caused the land to be surveyed, divided, mapped, and dedicated as represented on the plat, sec. 236.21 (2) (a), and at that time the approving authorities may require proof of ownership in the form of an abstract of title, title certificate, or title insurance policy. Sec. 236.21 (2) (b). No such express requirement, however, exists concerning a preliminary plat and we do not find one by implication.

The appellant argues a governing body under sec. 236.13 (2), Stats., may require the installation of reasonably necessary public improvements and only an owner could make these. It has not yet been decided by this court that this section applies to extraterritorial jurisdiction of an approving authority and the point is not herein decided. See also comment to sec. 236.13 in 27 W. S. A., p. 477. However, we do not see that this section requires an aggrieved person to be the owner of the entire subdivision at the time of the submission of a preliminary plat. A proper approving authority may require such improvements be made or a specified portion of the costs thereof paid in advance as a condition to the approval of a final plat. See *Zastrow v. Brown Deer* (1960), 9 Wis. (2d) 100, 100 N. W. (2d) 359. However, a city or village cannot require actual performance as a condition to the approval of a preliminary plat.

We do not agree that sec. 236.31 (1), Stats., restricting the sale of proposed platted land contemplates that the pre-

liminary plat must be submitted by the owner in fee of all the land or by his agent. This section contemplates sales by subdividers and expressly excepts contracts and offers of sale of lots which state on their face that they are contingent upon approval of a final plat and void if the plat is not approved. It applies to lots or a subdivision. It does not apply to acreage or prevent an owner from selling his land as such.

The petition for the writ alleged the respondent was the owner of part of the land, had contracts of purchase and options to purchase the rest. We do not find it necessary for one submitting a preliminary plat to be the owner in fee of all the land proposed to be subdivided at the time of the submission of the preliminary plat. The respondent's ownership, contracts, and options were sufficient to entitle it to submit a preliminary plat for consideration of the appellant. Its legal interests were affected and it was an aggrieved person because of the appellant's rejection of the preliminary plat. See *Oshkosh v. Winnebago County School Comm.* (1960), 9 Wis. (2d) 32, 100 N. W. (2d) 374.

We have considered the other arguments in the briefs. Some of them are unsound and the rest are not within the scope of this appeal or the motion below and can only be considered after a return has been made to the writ.

*By the Court.*—Order affirmed.