STATE EX REL. RUTHENBERG, Appellant, V. ANNUITY & PENSION BOARD OF CITY OF MILWAUKEE, Respondent.

Supreme Court

*No. 76–706. Submitted on briefs May 2, 1979.—Decided May 30, 1979.*
(Also reported in 278 N.W.2d 835.)

464

Herbert P. Ruthenberg, appellant,

For the appellant the cause was submitted on the briefs of *John J. Carter* and *Carter & Finn, S.C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *James B. Brennan,* city attorney, and *William J. Lukacevich,* assistant city attorney.

CONNOR T. HANSEN, J. On February 5, 1974, Ruthenberg, a patrolman for the City of Milwaukee Police Department, applied for a duty disability retirement allowance[1] pursuant to Milwaukee Charter Ordinance section 36.05(3). In making this application Ruthenberg relied on three work-related injuries. On February 5, 1972, he injured his back when he slipped on an icy sidewalk while carrying a stretcher. On December 1, 1972, he experienced pain in his back and right arm while shoveling snow at the police station. On June 7, 1973, he was treated for elbow pain which he believed was due to his frequent use of the telephone while on light duty assigned to desk work.

As required by the duty disability application procedure, the Annuity and Pension Board of the City of Milwaukee (hereinafter referred to as the Board) referred Ruthenberg to the Police Department Medical Panel (hereinafter referred to as the panel) for an evaluation. On March 12, 1974, the panel reported that

---

[1] An ordinary disability retirement allowance is limited to a maximum of 50 percent of the final average salary, whereas a duty disability retirement allowance is limited to a maximum of 75 percent of the final average salary.

Ruthenberg was physically incapacitated for the performance of duty as a natural result of the injury sustained on February 5th and that he was totally and permanently disabled. However, the report also said he should be rechecked in three months and that a decision would be made at that time. On June 18, 1974, the panel again reviewed Ruthenberg's progress and concluded that a psychiatric examination was necessary. Ruthenberg was referred to Dr. Bernard S. Schaeffer who concluded that he was suffering from a chronic conversion reaction which caused the pain in his back and right arm and that he was not malingering.[2] On August 6, 1974, the panel certified that Ruthenberg was not physically or mentally incapacitated for the performance of duty as the natural result of the February 5th injury, that he was not totally and permanently disabled and should not be retired.

On September 19, 1974, at Ruthenberg's lawyer's request, the Board deferred action on the panel report in order to allow Ruthenberg to submit additional medical evidence. Reports from four doctors were submitted to the panel and on November 19th the panel certified that Ruthenberg was totally and permanently disabled but should not be retired on duty disability. The panel made the following findings:

"Ptm. Ruthenberg claims he has pain in right arm and back continuously. Pain starts in fingers and travels upwards in right arm. SHOULD NOT CARRY A GUN— because of Dr. Schaeffer's findings of 'conversion reaction.'

There is no evidence, based on multiple specialty examinations, of pathology sufficient to warrant permanent disability.

---

[2] Dr. Schaeffer explained that a chronic conversion reaction was a neurosis in which the patient develops symptoms referrable to some part of the body not due to an organic cause but to emotional reactions he has difficulty in meeting.

Recommendation: Unfit for duty—suggest ordinary disability—not duty related."

At its November 21st meeting the Board accepted this report and denied Ruthenberg's application for duty disability retirement allowance. The Board concluded that he was eligible for ordinary disability retirement allowance. Ruthenberg then filed a petition for a writ of certiorari which was dismissed by stipulation because in February, 1975, a charter ordinance was passed which provided for an appeal to the Board itself. On April 8, 1975, Ruthenberg filed a petition for a hearing before the Board, a hearing which was subsequently held April 26–28 and May 25, 1976. The extensive testimony presented at the hearing will be reviewed as necessary in considering the issues presented on this appeal.

The Board met on November 18, 1976, to consider disposition of the application of Ruthenberg. During this session several motions were made, each directed to the disposition of the application. The motions failed to pass and include the following langauge which we deem pertinent to this appeal:

". . . to dispense with the Findings of Fact as presented by Assistant City Attorney Lukacevich and move to the direct question as posed in subsection (k) either granting or denying duty disability . . .

". . . to follow through on Assistant City Attorney Lukacevich's Findings of Fact for items 2 thru 7 and add the additional questions as per subsection (k) of Chapter 36.05(4) of the City Charter, (Employes' Retirement System Law), namely, Is Herbert P. Ruthenberg entitled to duty disability? . . . .

". . . that Pursuant to Chapter 36.05(4)(d) of the City Charter (Employes' Retirement System Law) the Annuity and Pension Board having had before it a hearing commencing on April 26, 1976 at the City Hall in the City and County of Milwaukee, State of Wisconsin, on the petition filed by Herbert P. Ruthenberg, which petition was based upon a denial of a duty disability re-

tirement allowance under Chapter 36.05(3) of the City Charter (Employes' Retirement System Law), said Board does hereby make the following findings based upon the facts adduced at such hearing that: Herbert P. Ruthenberg did not become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring while in the actual performance of duty and his claim for duty disability is hereby denied. . . .

". . . that after all testimony and hearings were heard, it is the determination of this Board that Herbert P. Ruthenberg is not entitled to duty disability. . . ."

The Ruthenberg application was finally disposed of by the Board by the adoption of the following motion, ". . . that Herbert P. Ruthenberg's claim for Duty Disability be denied. . . ."

Ruthenberg then filed a petition for a writ of certiorari in the circuit court pursuant to Milwaukee Charter Ordinance sec. 36.05(4)(m). The writ issued and the return was filed March 17, 1977. Prior to the return the Board filed a motion to quash the writ. A hearing was held on the motion on April 4, 1977. An order was entered granting the motion to quash the writ on April 12, 1977. This appeal is from that order.

In our opinion this case presents the following issues:

1. Whether the circuit court erred in considering the merits of the Board's decision in a hearing on a motion to quash the writ?

2. Whether the Board failed to act according to law in its conduct of the hearing or in reaching its decision?

3. Whether the Board's decision was contrary to the evidence, arbitrary and capricious and represented its will, not its judgment?

## PROCEDURE IN CIRCUIT COURT.

At the hearing on the Board's motion to quash the writ, Ruthenberg's lawyer contended that the question

of the sufficiency of the evidence to support the Board's decision was not then an issue. He contended that the hearing should be limited to the merits of the motion to quash and therefore should consider only the sufficiency of the petition.

The circuit judge responded stating that the procedure used in Milwaukee county was somewhat different in that the practice was to issue the writ immediately, rather than wait for a motion to quash to be filed, before having a hearing on the motion to determine whether the writ should issue. He said the only question presented was whether there was reasonable ground to believe the Board's decision was the result of honest judgment and was not arbitrary or capricious. The circuit judge then held that on the basis of his reading of the transcript and exhibits he found that the Board did not act arbitrarily and that its judgment was reasonable under the circumstances. The motion to quash was thereupon granted and an order issued.

The Board contends that its was permissible for the court to consider the merits of the action because Ruthenberg had raised that issue by alleging in the petition that the evidence was insufficient.

Ruthenberg's argument is derived from statements by this court that a motion to quash a writ of certiorari is in the nature of a demurrer. *See, e.g., State ex rel. Casper v. Board of Trustees,* 30 Wis.2d 170, 176, 140 N.W.2d 301 (1966). That statement is usually made in connection with the conclusion that there is a right to appeal from an order granting or denying such a motion. In *Casper, supra,* this court also said that the return did not fulfill the function of an answer and that the issues on review, such as the merits, jurisdiction or procedure, would be raised by motion. In *State ex rel. Czapiewski v. Milwaukee City Service Commission,* 54 Wis.2d 535, 196 N.W.2d 742 (1972), the court stated that even though the motion to quash was analogous to a demurrer

it was not a demurrer and could be used to raise an issue of laches and could rely on facts contained in the return. In *Lakeshore Development Corp. v. Plan. Comm.*, 12 Wis.2d 560, 107 N.W.2d 590 (1961), the court held a motion to quash could be used to raise an issue of jurisdiction, either before or after the return, but did not challenge the sufficiency of the petition. However, in *State ex rel. South Range v. Tax Comm.*, 168 Wis. 253, 169 N.W. 555 (1918), the court held a motion to quash challenged the sufficiency of the petition and presented the same question as a demurrer—is there a ground for relief?

The choice whether to affirm the underlying decision or quash the writ was discussed in *State ex rel. Gray v. Common Council of Oconomowoc*, 104 Wis. 622, 80 N.W. 942 (1899). The court there held that after the return it would be proper to quash the writ if the proceedings below were with full jurisdiction and regularity such that even if the writ were continued to further hearing a judgment could only result in affirmance. The court also stated that in such a situation it was immaterial whether the writ was quashed or the proceedings affirmed. In *Wilusz v. Witek*, 258 Wis. 397, 46 N.W.2d 337 (1951), where the trial court quashed the writ after a hearing on the motions and merits, this court held that because the trial court found that if the writ were continued to a further hearing the decision would be affirmed, the judgment quashing the writ was intended to have the effect of affirming the action. Finally, in *State ex rel. Park Plaza Shop. Ctr. v. O'Malley*, 59 Wis. 2d 217, 207 N.W.2d 622 (1973), the court held that where a statutory writ was involved its issuance was not discretionary and the proper procedure, in the absence of a motion to quash, would be to affirm the Board's decision.

Here, on the day of the hearing, the circuit court had both the motion to quash and the return before it. The

petition raised an issue as to sufficiency of the evidence. The circuit judge has read and considered the return and the record and had concluded that the decision of the Board should be affirmed. This has been recognized by this court as a permissible procedure under these facts. The court appropriately granted the motion to quash and this order had the effect of affirming the Board's decision.

The other arguments advanced on this issue concern the scope of review in a certiorari proceeding before the circuit court. Most recently in *State ex rel. Harris v. Annuity & Pension Board*, 87 Wis.2d 646, 275 N.W.2d 668 (1979), this court held that where the petitioner challenged the Board's decision as arbitrary and unreasonable, representing its will and unsupported by the evidence, the test was whether the evidence reasonably supports the decision. This test is one of four questions frequently held to be presented on a common-law writ of certiorari:

(1) Whether the Board kept within its jurisdiction;

(2) whether it acted according to law;

(3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and

(4) whether the evidence was such that it might reasonably make the order or determination in question.[3]

The first question requires the trial court to determine whether the Board acted within the scope of its powers.

_____

[3] *Van Ermen v. H&SS Department*, 84 Wis.2d 57, 63, 267 N.W. 2d 17 (1978) (parole revocation); *State ex rel. Geipel v. Milwaukee*, 68 Wis.2d 726, 731, 229 N.W.2d 585 (1975) (tax assessment); *Graff v. Denny*, 78 Wis.2d 65, 68, 106 N.W.2d 311 (1960) (pension board); *State ex rel. Ball v. McPhee*, 6 Wis.2d 190, 199, 94 N.W.2d 711 (1959).

The second requires the trial court to review the Board's procedure in light of the applicable statutes and due process requirements. *State v. Goulette,* 65 Wis.2d 207, 215, 222 N.W.2d 622 (1974). As to the third question, it is established that a Board decision is arbitrary and represents its will if it has acted without a rational basis or the exercise of discretion. *Van Ermen, supra,* at 64. The fourth question has been compared to the substantial evidence test under Chapter 227, Stats. *State ex rel. Beierle v. Civil Service Comm.,* 41 Wis.2d 213, 218, 163 N.W.2d 606 (1969). In a review of a decision on a writ of certiorari there is a presumption that the Board acted according to law and the official decision is correct and the weight and credibility of the evidence cannot be assessed. *Harris, supra,* at 652; *State ex rel. Richey v. Neenah Police & Fire Comm.,* 48 Wis.2d 575, 585, 180 N.W.2d 743 (1970); *State ex rel. Bluemound Amusement Park v. Mayor,* 207 Wis. 199, 204, 205, 240 N.W. 847 (1932).

Both parties here conclude that this is a statutory writ of certiorari because the writ is expressly provided for in Milwaukee Charter Ordinance section 36.05(5)(m). In several cases this court has discussed the changes a statutory writ can make in the common law scope of review. A statutory writ or other statutory review procedure may limit the scope of review on the common-law writ or may enlarge the scope of review and permit the court to look beyond the record.[4]

---

[4] *State ex rel. Enk v. Mentkowski,* 76 Wis.2d 565, 572, 252 N.W. 2d 28 (1977); *Browndale International v. Board of Adjustment,* 60 Wis.2d 182, 197, 198, 208 N.W.2d 121 (1973); *State ex rel. Kaczkowski v. Fire & Police Comm.,* 33 Wis.2d 488, 500, 501, 148 N.W.2d 44, 149 N.W.2d 547 (1967); *State ex rel. Casper v. Board of Trustees, supra,* at 176; *Lakeshore Development, supra,* at 565.

However, this court has held that where the statutory provision for the writ does not enlarge the scope of review the review is co-extensive with the common-law writ. *Berschens v. Town of Prairie due Sac,* 76 Wis.2d 115, 119, 250 N.W.2d 369 (1977). The Milwaukee Charter Ordinance section 36.05(4) (m) provides only that the petitioner ". . . may seek a review of such determination by filing a writ of certiorari, . . ." therefore the scope of review is that set out above for common-law writs.

### PROCEDURE BEFORE THE BOARD.

Ruthenberg first contends that the Board did not act according to law because the Board chairman failed to rule on numerous evidentiary objections made by the lawyers at the hearing. He contends that this failure to rule was a violation of that part of Milwaukee Charter Ordinance section 36.05(4) (g) which provides:

"(g) . . . It shall rule on the relevancy and pertinence of the evidence submitted at the hearing. . . ."

The Board counters with the remainder of section 36.05 (4) (g):

". . . The Board may also devise procedures which are designed to make the hearing more expeditious and less time-consuming and the Board's judgment as to the procedure to be employed shall be its exclusive determination."

What in fact happened was that early in the hearing, following numerous objections, the Board chairman indicated that from that point on objections would only be recorded and the answers would be allowed and that both would be considered in making the decision. The chairman further emphasized that this was not an ad-

versary proceeding and that the Board was only seeking the truth.

Considering the frequency of objections and the nature of the proceedings, this was an entirely reasonable way for the Board to have conducted the hearing and is well within its power under the ordinance.

Ruthenberg also challenges the Board's failure to make findings, contending that findings are required by Milwaukee Charter Ordinance section 36.05(4)(d):

"(d) The Board after the hearing on the petition shall make a finding based upon the facts adduced at such hearing and such finding shall be made in such manner and form as the Board determines to be appropriate; the Board shall give due respect to the requirements of Section 36.05(3). Predicated upon the finding of the Board, the Board shall make a determination in writing as to whether the duty disability retirement allowance is warranted under the provisions of this Act. A copy of the written finding and of the Board's determination shall be forwarded to the member who filed the petition."

It is undisputed that the Board determined only that Ruthenberg's claim for duty disability be denied. The Board contends that this finding is sufficient, emphasizing that portion of section 36.05(4)(d), which says:

". . . such finding shall be made in such manner and form as the Board determines to be appropriate; . . ."

The Board also suggests that the sufficiency of the finding here cannot be considered because it was not challenged in the petition for the writ. By challenging the sufficiency of the evidence to support the finding Ruthenberg brought the adequacy of the finding before the court. However, the circuit court did not rule on this particular point.

This court has had occasion to consider the type of findings necessary in cases involving agencies which are not subject to the requirements of Chapter 227. In *Transport Oil, Inc. v. Cummings,* 54 Wis.2d 256, 195 N.W.2d 649 (1972), this court held that even where Chapter 227 did not apply, an agency had the obligation to state reasons for its conclusions. In *Transport Oil, Inc.* this court quoted extensively from *Securities Comm. v. Chenery Corp.,* 318 U.S. 80 (1943), in which the United States Supreme Court stated that the review process required that "the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Id.* at 94 and 95.

In *Edmonds v. Board of Fire & Police Commrs.,* 66 Wis.2d 337, 349, 224 N.W.2d 575 (1975), this court withdrew the statement in *State ex rel. Heffernan v. Board,* 247 Wis. 77, 85, 18 N.W.2d 461 (1945), that a mere determination of guilt or innocence was sufficient and held that the sufficiency of the findings was an issue of law reviewable on certiorari. *Edmonds, supra,* at 348, relying on several United States Supreme Court cases therein cited, concluded that determinations by administrative agencies not encompassed within ch. 227 review procedure, "require a statement of findings as a matter of procedural due process." This court there explained that findings are necessary for the following reasons:

"First, findings facilitate judicial review by allowing the court to focus its attention on the actual basis for the decision and the evidentiary support therefor. Second, requiring findings serves the goal of limited judicial review. The reviewing court is not required to supply its own factual conclusions through a de novo search of the record. This point is particularly important where the reviewing court concludes the agency applied the wrong rule of law to the case. Third, findings help prevent arbitrary decision making. Where administrators

have to state the factual basis for a decision that may be subject to close scrutiny in subsequent judicial proceedings, they are bound to take more care in arriving at their determination. Fourth, Davis suggests findings help parties plan their cases for judicial review or rehearing. Morever, he asserts, parties have a right to be informed of why they lost. Finally, Davis argues that requiring agencies to state findings allows reviewing courts to keep the agencies within their jurisdiction." *Edmonds, supra,* at 348.

The court remanded the case for findings of fact and conclusions of law.

Recently in *Harris, supra,* at 660, 661, this court held that under the circumstances of that case, which was also brought under Milwaukee Charter Ordinance sec. 36.05, it could be inappropriate to remand for more specific findings. However, in *Harris* the Board made a finding of fact which was determinative of the petitioner's claim. The Board also made a conclusion of law that the petitioner was not entitled to benefits. *Harris, supra,* at 660, emphasized that even though the review provisions of sec. 227.13, Stats. 1973, were not directly applicable, sound administrative procedures required that an administrative agency make definite and certain findings of fact together with its conclusions of law.

Here the Board made no findings of fact and was unable to conclude that appellant was not entitled to benefits so determined only that his claim should be denied. This determination falls far short of the minimum due process requirements recognized in *Transport Oil, supra,* and *Edmonds, supra.* This action of the Board does not even meet the ordinance requirements that in making its finding "the Board shall give due respect to the requirements of Section 36.05(3)," and that the Board make its determination of eligibility "[p]redicated upon the finding." The ordinance clearly contemplates a finding

relating to the requirements for duty disability set out in section 36.05(3) (a) :

". . . Any member in active service who shall become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty shall, upon filing a request for retirement with the board on a form provided by the board for that purpose, be entitled to a duty disability retirement allowance. . . ."

From the Board's determination here it is impossible to determine whether the Board concluded that Ruthenberg was not permanently and totally incapacitated for duty, or that he was so disabled but not because of a duty-related injury, or that the physical injury was duty-related but not the mental disability. The testimony before the Board was extensive. It is our conclusion that the Board must be required to make findings supporting its conclusion so that there can be a meaningful judicial review.

## SUFFICIENCY OF THE EVIDENCE.

Ruthenberg interprets the Board's decision as a determination that he is permanently and totally disabled but that the disability is not the natural result of a duty injury. He reaches this conclusion by arguing that the fact of permanent and total disability is no longer in issue because the Board found him so disabled in its original decision on November 21, 1974. He then points out that if the permanent and total disability is conceded the evidence naturally leads to the conclusion that the disability is a result of a duty injury.

Nine doctors testified at the hearing before the Board in April and May, 1976. Dr. Joseph G. Halser, a member of the Police Medical Panel, was the first to see Ruthenberg. He examined him two days after Ruthenberg wrenched his back by slipping on the ice carrying a

stretcher. He treated Ruthenberg for pain in the right lower lumbar area. He recommended that the officer return to light duty in May, 1972, following the February, 1972, injury. He saw Ruthenberg again in December when he complained of back pain and numbness in his right arm while shoveling snow at the police station. Halser said the back injury was an acute back strain which would ordinarily be temporary and resolve itself but that Ruthenberg had a fixation on it and it bothered him because he believed he had a bad back. The doctor did not believe the back problem was caused by degenerative spine changes, that a second back injury was experienced shoveling snow, and that the arm problem was not related to the back injury and was probably radial humoral bursitis which was aggravated by writing.

Following the snow shoveling incident Dr. Halser referred Ruthenberg to Dr. Sean Keane, an orthopedic surgeon. Keane diagnosed an injury to the ulnar nerve at the right elbow as the cause of the numbness. He treated Ruthenberg and on December, 1973, he performed an operation designed to relieve tension on the ulnar nerve. He said Ruthenberg's condition improved after that but that he had not made a full recovery and did have a five to ten percent permanent disability, which to a reasonable medical certainty was caused by snow shoveling. He agreed that Ruthenberg did have a functional overlay which exacerbated the symptoms he suffered.

Dr. Arthur Howell, a plastic surgeon, saw Ruthenberg following his surgery. He concluded on the basis of nerve conduction tests that Ruthenberg was suffering from a weakness of the right forearm and hand which was permanent in nature. He said he believed to a reasonable degree of medical certainty that this injury occurred while shoveling snow.

Dr. Kenneth Hoelscher, a specialist in physical medicine and rehabilitation, also saw Ruthenberg following his surgery. He conducted electrical diagnostic tests

which indicated that appellant was not suffering from a motor function deficit. He said he would not be able to tell if Ruthenberg had a sensory deficit. He testified Ruthenberg had a twenty percent hand impairment which was not likely to result from one episode of shoveling snow because it was the type of injury that resulted from little injuries over the years.

Dr. Richard H. Strassburger testified that he saw Ruthenberg once. He concluded that the slip on the ice was not the type of injury that resulted in permanent disability and that Ruthenberg was not permanently disabled by it; and that it was impossible to get an ulnar nerve injury from shoveling snow. He said when he saw the officer in April, 1973, he didn't think he would be permanently disabled but that he couldn't predict the future.

Dr. David Shapiro saw Ruthenberg once in November, 1975. He agreed that the ulnar nerve couldn't be injured shoveling snow. He also said there was no objective evidence of permanent disability regarding the back or ulnar nerve injury.

Dr. Bernard Schaeffer, a psychiatrist, testified that he saw Ruthenberg twice. He said he concluded that Ruthenberg suffered from some involvement of the right ulnar nerve which was overshadowed by a conversion reaction. He said the officer's lower back pain was due to the same conversion reaction. He testified the back injury was the precipitating factor in the conversion reaction; that the reaction was related to his work; and that conversion reaction symptoms are real and resulted in a permanent disability in Ruthenberg's case.

Dr. James Hurley, also a psychiatrist, testified that he too diagnosed a conversion reaction precipitated by back injury which resulted in a permanent disability.

Dr. Clement L. Budney, a family practitioner, testified as chairman of the Medical Panel. He said the panel's

recommendation was based on reports from Drs. Shapiro and Strassburger. In an attempt to understand how the panel arrives at its decision, Budney was asked to define duty disability. He initially said a duty disability was a condition under which there is some loss of normal body function manifested by inability to carry on ordinary duties. He said ordinary disability was the same thing except that it didn't prevent one from carrying on police duties. He said the panel recommended that Ruthenberg be placed on limited duty and that if he could not work they would recommend ordinary disability. Budney also said that they signed the report forms before they were filled out and never saw them after that so they might contain an erroneous recommendation. He said that the panel concluded Ruthenberg should be retired on ordinary disability because he was not capable of performing a police officer's duties. He said they didn't deny that he was injured on duty, only that the type of injury was sufficient for duty disability. A Board member asked Budney why his definitions didn't mention the origin of the injury. He replied that the origin of the injury could play a role in determining the type of injury. He explained that a police officer could be hurt and disabled on duty and not have a duty disability. He said the panel didn't feel that the injury Ruthenberg sustained was such that he would not be able to work on limited duty. He said the arm problem was the reason he was disabled and that this could not have resulted from shoveling snow. In response to another question from a Board member he said the extent of injury, not its origin, determines duty disability.

From the foregoing brief review of extensive medical testimony, it is obvious that the case presents conflicting medical opinions which must be resolved by the Board. The Board chose to do so by the simple and single mo-

tion stating only that ". . . Herbert P. Ruthenberg's claim for Duty Disability be denied . . ." Such being the case, there is no way in which Ruthenberg can be afforded an adequate judicial review of the Board's determination. It is the responsibility of the Board to resolve the contradictory medical opinions by assessing credibility and weight to the testimony of the respective witnesses and to make appropriate findings based upon such assessment and in support of its ultimate conclusion.

In *State ex rel. Markarian v. Cudahy,* 45 Wis.2d 683, 173 N.W.2d 627 (1970), this court said that the tax board's failure to make the assessment on the statutory basis was an error of law to be corrected on certiorari. In *State ex rel. Beierle v. Civil Service Comm., supra,* the court said the issue on certiorari was whether the commission's interpretation of the city code was reasonable.

In the case here under consideration the Board made no findings; therefore, there is no way this court can review its final determination or pass upon whether it reasonably applied the standard for duty disability retirement allowance as set forth in Milwaukee Charter Ordinance, sec. 36.05(3)(a). Therefore we conclude the order of the circuit court must be reversed and the cause remanded with directions that it be remanded to the Board and that the Board be directed to make appropriate findings to support its conclusion. The findings of the Board must clearly indicate that Ruthenberg was or was not injured at some definite time and place while in the actual performance of duty and, if so, that he did or did not become permanently and totally incapacitated for duty as a natural and proximate result of such injury.

*By the Court.*—Order reversed and cause remanded.