COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2063**

Cir. Ct. No. **2018CV1839**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

WILLIE P. WATKINS,

PETITIONER-APPELLANT,

V.

PENSION BOARD OF THE EMPLOYEES RETIREMENT SYSTEM
OF THE COUNTY OF MILWAUKEE,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed.*

Before Brash, P.J., Dugan and Fitzpatrick, JJ.

¶1 DUGAN, J. Willie P. Watkins appeals the trial court's order affirming the decision of the Pension Board of the Employees' Retirement System of the County of Milwaukee (Board) that upheld the denial of Watkins'

application to retire under the Rule of 75.[1]  Under the Milwaukee County Employee Retirement System (ERS), the County affords certain county employees the option of early retirement with what is called the Rule of 75 enabling them to receive a full pension when the age of the member[2] plus the member's years of county service equal seventy-five.  *See* § 4.1(2).

¶2      Watkins argues that (1) the trial court failed to articulate and apply a proper standard of review; (2) the Board's interpretation of § 11.4(c)[3] of the county's pension ordinance was unreasonable; and (3) the Board improperly reviewed and relied upon a confidential March 2017 fiscal analysis in denying his retirement application.  We disagree and, for the following reasons, affirm.

---

[1] The Board issued two decisions denying Watkins' appeal.  A March 2017 decision denied the appeal.  Watkins then filed an action for certiorari review with the Milwaukee County Circuit Court, which was assigned to the Honorable Rebecca F. Dallet and resulted in a remand of the matter to the Board.  We refer to Judge Dallet as the circuit court.

After further proceedings, the Board issued a February 2018 decision denying the appeal. Watkins then filed another action for certiorari review with the Milwaukee County Circuit Court, which was assigned to the Honorable Stephanie Rothstein.  Judge Rothstein issued an order affirming the Board's February 2018 decision.  Watkins appeals Judge Rothstein's order.  We refer to Judge Rothstein as the trial court.

The ordinance provisions relevant to the pension issues in this case are found in the county's pension ordinance, § 201.24 of the Milwaukee County General Ordinances (MCGO). Throughout this opinion, we cite the sections within MCGO § 201.24 as "§" followed by the section number.  For example, MCGO § 201.24(11.4) is simply cited as § 11.4.

[2] "Member" refers to an employee covered by ERS.  *See* § 2.1, § 2.5.

[3] Section 11.4 provides for benefit computations by allowing retirement system reciprocity.  That section provides, in part, "[a]ny person who is a member of either the county or the City of Milwaukee retirement system who … transfers from employment in either the county or city… shall be entitled to receive a retirement allowance which shall be computed in the following manner[.]"  Section 11.4 does not make any reference to a specific start date.

## BACKGROUND

¶3     Watkins began working for Milwaukee County as a Milwaukee County Deputy Sheriff on September 11, 1998, and became an ERS member on that date.  Watkins states that he was previously employed by the City of Milwaukee as a special education teacher from December 11, 1989, through September 8, 1998.[4]

¶4     As a deputy sheriff Watkins was covered by the 2014 collective bargaining agreement (CBA) between the County and the Milwaukee Deputy Sheriffs' Association (Association).  CBA § 3.20(9) sets forth the requirements for a deputy sheriff to be eligible for the Rule of 75.  That section provides, in part, that "[e]mployees who become Deputy Sheriffs I … prior to January 1, 1994 shall be eligible to retire without penalty when the total of their age and years of creditable service equals or exceeds seventy-five (75)."

¶5     The County's pension ordinance works together with the CBA as described in CBA § 6.01:

> All existing ordinances and resolutions of the Milwaukee County Board of Supervisors affecting wages, hours and conditions of employment not inconsistent with this Agreement are incorporated herein by reference as though fully set forth.  To the extent that the provisions of this Agreement are in conflict with existing ordinances or resolutions, such ordinances and resolutions shall be modified to reflect the agreements herein contained.

---

[4] The Board states that Watkins worked as an employee of the city in the Milwaukee Public Schools (MPS) as a teacher.  We note that the parties do not make a distinction whether Watkins was an employee of the city or MPS as it may relate to any issues in the case.

The pension ordinance and the CBA also work together for pension administration as stated in pension ordinance § 8.21(2) which provides, in part, "[a]ll provisions of such collective bargaining agreements as applicable to specific members and relating to the [ERS] are hereby incorporated by reference within this ordinance for the purpose of this delegation of authority." Therefore, pursuant to both the ordinance and the CBA, to be eligible to retire under the Rule of 75 the individual had to be employed as a deputy sheriff with the County prior to January 1, 1994.

*Retirement application and Retirement Plan Services (RPS) action*

¶6      Some time prior to March 31, 2016, Watkins, who was then fifty-one years old, went to discuss his retirement with the RPS office, which is charged with the day-to-day operations of the ERS plan. Watkins informed RPS that he would soon qualify for retirement under the Rule of 75.

¶7      By letter dated March 31, 2016, RPS denied Watkins' retirement application under the Rule of 75. RPS informed Watkins that the CBA provided that a deputy sheriff, represented by the Association, who became a deputy sheriff prior to January 1, 1994, was eligible for the Rule of 75, and that the Board had recently determined eligibility for the Rule of 75 was based on the retiring deputy's date of membership in ERS. Further, RPS explained that § 11.4 "does not allow a member to use his enrollment date with the City to adjust his ERS enrollment date to determine eligibility for a benefit with the County."[5] RPS also

---

[5] The RPS letter also informed Watkins that he had earned 6.3571 retirement pension credits working for the City. Watkins has not disputed the RPS's calculation of his city retirement pension credits.

informed Watkins he was not eligible for the Rule of 75 because he had not enrolled in ERS until 1998.[6]

*Appeal to the Board*

¶8    By letter dated July 15, 2016, Watkins appealed the RPS's denial of the Rule of 75 retirement. The Board heard and voted on the appeal at its September 28, 2016 meeting. However, because the ordinance and rules required a five-member majority and there was no majority vote, the vote did not resolve the appeal. The hearing on Watkins' appeal was then delayed while the Board waited for a fiscal analysis under § 8.17(c).[7] The Board rescheduled Watkins' appeal for March 22, 2017. The County comptroller prepared two fiscal analyses memoranda dated March 22, 2017, and Watkins was given a fiscal analysis memorandum prior to the March 22, 2017 hearing.[8]

---

[6] Watkins also pursued the issue of his retirement under the Rule of 75 by filing a grievance. The County denied the grievance based on its determination that § 11.4(a) did not allow an ERS member to use his or her city enrollment date to adjust the member's ERS enrollment date to determine eligibility for a benefit with the County. Watkins then arbitrated his grievance. The arbitrator concluded that Watkins did not have a contractual right to retire under the Rule of 75 and dismissed the grievance.

[7] Section 8.17(c) provides in part:

> In exercising [the Board's] powers under section 8.17(a)… [to construe and interpret the system, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits] … on any question potentially affecting the rights of two (2) or more current or future members, the board shall not take action before receiving and reviewing a fiscal analysis.

[8] The second of the two March 22, 2017 fiscal memoranda was designated confidential and given to Board members prior to the hearing.

¶9     Watkins, represented by counsel, appeared at the Board's March 22, 2017 meeting.  He argued that ERS should use a member's aggregate creditable service from both the city and county retirement systems to determine qualification for all retirement benefits.  He cited the pension ordinance, particularly §11.4(c); the rules; the CBA; and the intrastate retirement reciprocity statute, WIS. STAT. § 40.30 (2017-18).[9]  Watkins further argued that RPS told him that he could retire under the Rule of 75 and that he relied on that information.  Watkins also requested a copy of the confidential March 22, 2017 fiscal memorandum.

*The Board's March 2017 decision*

¶10    The Board issued a written decision in March 2017 denying Watkins' appeal.  Relying on the ordinance, the rules, and the CBA's language as incorporated into the ordinance and the rules, the Board determined that Watkins was not eligible for the Rule of 75 because he was not an ERS member until after January 1, 1994.  The Board further concluded that nothing in the CBA or in RPS's past administration of the Rule of 75 suggested that Watkins' enrollment date with the City could be used as his ERS enrollment date.  The Board also addressed and rejected Watkins' arguments under both § 11.4 and the intrastate retirement reciprocity statute.

¶11    The Board also held that, even if RPS staff told Watkins that he was eligible to retire under the Rule of 75, the Board was bound to administer the ERS

---

[9] WISCONSIN STAT. § 40.30 provides for intrastate retirement system reciprocity and addresses vesting, eligibility, and benefit computations.  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

according to the ordinance and rules, and it could not provide benefits to a member based on erroneous RPS representations that violated the ordinance and rules.

*Circuit court certiorari review*

¶12    Watkins then filed a petition for certiorari review with the Milwaukee County Circuit Court.  After the circuit court heard the parties' oral arguments, it issued an oral decision that ordered the Board to provide Watkins with a complete version of the March 22, 2017 confidential fiscal memorandum and remanded the matter for further proceedings, without addressing the merits of the Board's decision.

¶13    Following the remand, the Board provided Watkins with the confidential fiscal memorandum and, thereafter, Watkins appeared with counsel and presented his case at the Board's January 24, 2018 meeting.  The Board denied Watkins' appeal in a decision dated February 19, 2018.  It concluded that Watkins was not eligible to retire under the Rule of 75 because he had not been employed as a deputy sheriff prior to January 1, 1994.

¶14    On March 2, 2018, Watkins filed his second petition for certiorari review in the Milwaukee County Circuit Court seeking review of the Board's February 2018 decision.  After considering the parties' briefs and oral arguments, the trial court issued an oral decision denying the writ of certiorari.  On September 19, 2018, the trial court entered a short final order denying the writ of certiorari and dismissing the action.  This appeal follows.

# DISCUSSION

¶15    Watkins argues that (1) the trial court failed to articulate and apply a proper standard of review; (2) the Board's interpretation of § 11.4(c) was unreasonable; and (3) the Board improperly reviewed and relied upon a confidential fiscal analysis in denying Watkins' retirement application.

## I.    The standard of review and applicable law

¶16    The parties are in agreement that this case comes before us as a common law certiorari review of the Board's February 19, 2018 decision and that we therefore review the decision of the Board and not that of the trial court.  *See State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).[10]   However, the parties disagree on the standard of review that we should apply.  Watkins argues that we should apply a *de novo* standard of review in considering the Board's interpretation of the ordinance and statute and apply the rationale and holding of the Wisconsin Supreme Court's recent decision in *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶¶78-81, 83, 382 Wis. 2d 496, 914 N.W.2d 21, which limits the judicial deference afforded to decisions made by administrative agencies.  With respect to the confidential memorandum, Watkins asserts that we should consider whether the Board failed to act according to the law and, instead, acted arbitrarily, oppressively, or unreasonably.[11]

---

[10] As noted, Watkins argues that the trial court erred because it failed to identify and articulate the appropriate standard of review.  However, the standard of review applied by the trial court is irrelevant, because, on certiorari review, we review the decision of the Board and not that of the trial court.  *See State ex rel. Harris v. Annuity & Pension Bd.*, 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979).  Therefore, we need not further address this issue.

[11] Watkins cites *State ex rel. Ruthenberg v. Annuity & Pension Board of the City of Milwaukee*, 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979).

¶17　The Board argues that on review we should consider whether: (1) the Board kept within its jurisdiction; (2) the Board proceeded on a correct theory of law; (3) its action was arbitrary, oppressive, or unreasonable, and represented its will and not its judgment; and (4) the evidence was such that the Board might reasonably make the determination in question. *See **Ottman v. Town of Primrose***, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.　The Board acknowledges that this court will apply *de novo* review to questions of law. However, the Board argues that we should give deference to its interpretation of the ERS plan because of the Board's familiarity and expertise with the plan. *See id.*　The Board further argues ***Tetra Tech*** does not apply here because, unlike ***Tetra Tech***, which was an appeal from an administrative agency's decision, this appeal involves a municipal entity's decision.

¶18　As further explained, we conclude that, under either standard, § 11.4(c); the CBA; and WIS. STAT. § 40.30 all support the Board's conclusion that to qualify for the Rule of 75 Watkins had to be employed as a deputy sheriff with the County prior to January 1, 1994.　Consequently, we need not resolve the question of the proper standard of review. *See **Maryland Arms Ltd. P'ship v. Connell***, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (stating that "appellate court[s] should decide cases on the narrowest possible grounds[,]" and that we need not address"[i]ssues that are not dispositive").

¶19　Courts apply the same rules to construe statutes and municipal ordinances. ***Bruno v. Milwaukee Cty.***, 2003 WI 28, ¶6, 260 Wis. 2d 633, 660 N.W.2d 656.　"[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." ***State ex rel. Kalal v. Circuit Court for Dane Cty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.　"Statutory language is read where possible to give reasonable

effect to every word, in order to avoid surplusage." ***Id.***, ¶46. Generally, the interpretation and application of an ordinance to an undisputed set of facts is a question of law that we review *de novo*. ***Ottman***, 332 Wis. 2d 3, ¶55.

¶20 Section 4.1(2) sets forth the Rule of 75 for seven different subcategories of employees of which deputy sheriffs are only one. As noted, pursuant to § 4.1(2)(f), a deputy sheriff had to be employed with the County as a deputy prior to January 1, 1994, and had to meet the combined creditable service and age requirements to be able to retire under the Rule of 75.

¶21 Section 11.4(c) of the pension ordinance provides service credit formulas for retirement system purposes for persons who are members of either the County or the City retirement system and who transfer from either employment with the County or City. The provision states that its "intention" is that any person transferring between the two entities "shall not suffer any diminution of the normal retirement benefit" that the person had accrued in the system from which the person transferred. *See* § 11.4(a)(1).

## II. The Board properly interpreted § 11.4(c) in determining that the Rule of 75 did not apply to Watkins

¶22 The Board denied Watkins' application for retirement under the Rule of 75. The Board found that Watkins was not eligible to retire under the Rule of 75 because the CBA is incorporated into the ordinance by § 8.21 and, under the ordinance and the CBA, a deputy is only eligible to retire under the Rule of 75 if that person was a deputy prior to January 1, 1994. The Board concluded that § 4.1(2)(f) and the CBA "terminate[d] eligibility for the Rule of 75 [for persons hired as deputy sheriffs] after January 1, 1994." It also concluded that there is no

provision in the CBA, the ordinances, or the rules that would allow Watkins to use his city enrollment date to qualify for the Rule of 75.

¶23    In response to Watkins' argument that the Board's interpretation is inconsistent with the policy of the reciprocity provisions, the Board stated it cannot make its decisions based on policy when the language in the ordinance is clear.  Further, the Board concluded that Watkins had not established that his transfer from the City to the County caused him to lose a benefit earned at the City, because the Rule of 75 is a county, not a city, benefit.  We agree.

¶24    Watkins argues that § 11.4(c) states that "the aggregate creditable service including all service credit shall be the number of years or fraction of years of such service allowable under the respective provisions of both the county or [c]ity retirement system and be used to determine qualification for all retirement benefits."  He then argues that, when combining his city service credit and his county service credit, he qualifies for the Rule of 75.  He asserts that, pursuant to § 11.4(c) and WIS. STAT. § 40.30, his start date with the County gets pushed back to his start date with the city schools.

¶25    By contrast, the Board argues that to be eligible for the Rule of 75, a deputy sheriff had to become a deputy sheriff prior to January 1, 1994, and had to be a member of the Association.

¶26    We agree with the Board.  The effect of Watkins' argument is to read out of both the ordinance and the CBA, the requirement that an individual had to become a deputy sheriff before January 1, 1994, for the individual to be eligible for the Rule of 75.  Watkins' interpretation would be contrary to the principle that statutory language is read "to give reasonable effect to every word," where possible.  *See Kalal*, 271 Wis. 2d 633, ¶46.  Watkins was not a deputy

sheriff prior to January 1, 1994. Therefore, under the pension ordinance and the CBA, he may not retire under the Rule of 75.

¶27 Watkins also premises his argument in part on WIS. STAT. § 40.30(1), the intrastate retirement reciprocity statute. The statute states in relevant part, "[t]his section shall be construed as an enactment of statewide concern to encourage career public service by employees of … 1st class cities and counties having a population of 750,000 or more[.]" *See id.* Watkins argues the stated purpose of § 40.30(1) is to encourage career public service by employees of the State, first class cities, and counties. He argues that by allowing individuals like him to retain the benefits they earned as city employees after they go to work for the County, the statute is intended to attract and retain lifetime public employees.

¶28 However, Watkins does not assert that one of the benefits that he earned as a city employee was the option to retire under a Rule of 75. He does not claim that the city retirement system includes a provision equivalent to the Rule of 75. Therefore, he could not have earned that benefit as a city employee and did not lose any such benefit when he transferred his employment to the County—the Rule of 75 is a county benefit, not a city benefit.

¶29 Watkins further argues that the Board's interpretation of §11.4(c) is contrary to the way that it has interpreted that provision in relation to vacation. He states that historically, when an individual moves from employment with the city to employment with the county, § 11.4(c) has been interpreted as combining the employee's county and city years of service to "push back" the start date with the County. Watkins points out that vacation is determined under the CBA "based on years of continuous service." Watkins then states that the only way that he is

entitled to 240 hours of vacation annually, even though he does not have twenty years of actual continuous service with the County, is by pushing back his start date with the County to include his years of service with the City.

¶30   However, Watkins ignores CBA § 3.14 which relates to vacation. That CBA provision references "years of continuous service"—it does not identify a specific start date.  Start date and years of continuous service are separate and distinct concepts.  Watkins cannot read out of the pension ordinance and CBA the January 1, 1994 start date.

¶31   The ordinance and the CBA clearly provide that to qualify for retirement under the Rule of 75, a deputy sheriff had to be employed as a deputy prior to January 1, 1994, and to be a member of the Association.  Therefore, because Watkins was not employed as a deputy sheriff prior to the critical January 1, 1994 date, we conclude that Watkins does not qualify for retirement under the Rule of 75.[12]

## CONCLUSION

¶32   For the reasons stated, we conclude that the Board's decision was proper as a matter of law.  Therefore, we affirm the trial court's order.

---

[12] As noted, Watkins further argues that the Board improperly reviewed and relied on the confidential March 2017 fiscal analysis which he asserts was irrelevant to the merits of his case. We note that the Board's written decision states that the fiscal analysis did not affect its substantive decision.  Moreover, based on our discussion above, the Board was bound by the language in the ordinance and the CBA.  Therefore, the fiscal analysis could have no affect on the Board's decision or on our decision to affirm the Board's decision.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.