STATE of Alaska, Appellant/Cross–Appellee,

v.

UNITED COOK INLET DRIFT ASSOCIATION, Kenai Peninsula Sportsman's Association, Ronald Cox, Timothy Moore, and Henry Wojtusik, Appellees,

Ninilchik Traditional Council, Appellee/Cross–Appellant.

Nos. S–4966, S–4967.

Supreme Court of Alaska.

Feb. 18, 1994.

---

Sarah E. Gay, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellant/cross-appellee.

Eric Smith, Anchorage, for appellee/cross-appellant.

Michael A.D. Stanley, Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

## I. *BACKGROUND*

In *McDowell v. State*, 785 P.2d 1 (Alaska 1989), this court determined that the preference given to rural residents under Alaska's subsistence laws to harvest Alaska's fish and game resources violated sections 3, 5, and 17 of article VIII of the Alaska Constitution. *Id.* at 9. On remand the superior court held that the rural preference provisions were severable from the remaining subsistence provisions. The Attorney General's office subsequently advised the Alaska Department of Fish and Game and the Joint Boards of Fisheries and Game that where harvestable surpluses of a stock were sufficient to satisfy all subsistence uses of that stock, any Alaskan who desired to participate in the subsistence use of that fish or game stock was eligible to do so.

On October 28, 1990 the Joint Boards of Fisheries and Game adopted Policy Statement No. 90–18–JB, on the premise that they had "no other option than to apply the standard that all Alaskans are now eligible subsistence users under Tier I during the upcoming regulatory cycle." Pursuant to this "all-Alaskan" policy, the Board of Fisheries adopted regulations that codified subsistence salmon fishery management plans for coho

salmon in Cook Inlet's Southern District and for all salmon species in the Northern and Central Districts. *See* 5 Alaska Administrative Code (AAC) 01.596 (repealed 1993); 5 AAC 01.598 (repealed 1993).

Prior to the scheduled effective date of these regulations, United Cook Inlet Drift Association (UCIDA) filed suit seeking declaratory and injunctive relief regarding 5 AAC 01.596 and 5 AAC 01.598. UCIDA sought a declaration that the regulations were invalid and unenforceable "because they are based on a policy statement of the Board of Fisheries that in another action has been held invalid and of no force and effect."[1]

The prior action to which UCIDA refers is *Morry v. State*, No. 2BA–83–87 Civ. (Alaska Super., May 23, 1991), in which Judge Michael I. Jeffery issued a partial final judgment pursuant to Alaska Civil Rule 54(b). This partial final judgment provided in relevant part:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any policy statement by the Joint Boards of Fisheries and Game, or the Board of Game individually, declaring that "all Alaskans are now eligible subsistence users" is invalid and of no force and effect unless interpreted to mean that "all Alaskans are *eligible to be considered* subsistence users" *if,* prior to the subsistence hunting, their individual use of the fish or game meets criteria for "noncommercial, customary and traditional" subsistence uses of the particular fish and game population being harvested, under criteria established by regulation such as 5 AAC 99.010(b). *McDowell v. State*, 785 P.2d 1, 11 (Alaska 1989).

The Ninilchik Traditional Council (Ninilchik) moved to intervene, contending that the challenged regulations adversely affected the

---

1. In its superior court complaint UCIDA also asserted that the regulations were invalid because they were inconsistent with existing subsistence statutes and were not adopted in conformity with the Administrative Procedure Act, AS 44.62.

After the complaint was filed the superior court issued a temporary restraining order prohibiting the state from implementing the Upper Cook Inlet Subsistence Management Plan, 5 AAC

01.598. The state then petitioned for review. We granted the petition and reversed because the superior court had failed to consider the potential injury to subsistence users that would result from issuance of a T.R.O., and on the further ground that AS 16.05.258(c) granted a preference to subsistence users over commercial users. *State v. United Cook Inlet Drift Ass'n,* 815 P.2d 378, 379 (Alaska 1991).

subsistence lifestyle and culture of its members. Ninilchik's motion was subsequently granted.[2]

The superior court's Decision on Motion for Declaratory Judgment concluded that the same all-Alaskan policy statement being challenged in this case had been previously considered and held invalid in *Morry*. The superior court observed that Judge Jeffery's invalidation of the all-Alaskan policy was not confined to the facts of *Morry*. The superior court further held that it was bound by application of the doctrine of collateral estoppel to follow Judge Jeffery's ruling invalidating the all-Alaskan policy.[3] Based on Judge Jeffery's ruling the superior court granted final judgment to UCIDA on Count I of its complaint:

> 5 AAC 01.596 and .598 are declared invalid for the reason that the state is collaterally estopped from asserting their validity because of the decision of [Judge Jeffery] in *Morry v. State*, 2BA–83–87 Civ., in which that court invalidated the Alaska Board of Fisheries and Game's policy that "all-Alaskans [sic] are eligible to participate in subsistence uses."

Following the entry of final judgment, both UCIDA and Ninilchik moved for awards of full attorney's fees on the ground that they were public interest litigants. The superior court denied the motions for full fees, but awarded partial fees of $4,237.50 to UCIDA and $3,206.25 to Ninilchik.

The State has appealed from the superior court's invalidation of the "all-Alaskan" policy. Ninilchik has cross-appealed from the superior court's refusal to award it full reasonable attorney's fees on the basis of its status as a public interest litigant.[4]

## II. NON–MUTUAL COLLATERAL ESTOPPEL

### A. Standard of Review

This court is not bound by the superior court's resolution of questions of law. Rather we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy. *Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 (Alaska 1991). The applicability of collateral estoppel to a particular set of facts is a question of law subject to independent review. *Rapoport v. Tesoro Alaska Petroleum Co.*, 794 P.2d 949, 951 (Alaska 1990).

### B. Mootness

The parties disagree on whether the disputed legal issue underlying the State's appeal is moot. Judge Jeffery's ruling in *Morry* invalidating the "all-Alaskan" policy was later overruled in *State v. Morry*, 836 P.2d 358 (Alaska 1992). Therefore, UCIDA and Ninilchik contend that the superior court's judgment in this case is now moot.[5] The State argues that even if we conclude that the non-mutual offensive collateral estoppel issue is technically moot, we still should consider it under our discretionary review authority.

This case is not moot. The underlying judgment of the superior court exists until it is vacated by the superior court or vacated or reversed by this court. We do so in this case based on our decision in *Morry*.

The question that may be moot is the propriety of using non-mutual collateral estoppel against the State. As to this question, we think the State's arguments are persua-

---

2. The superior court concluded that Ninilchik met requirements for intervention set out in Civil Rule 24(a) and *State v. Weidner*, 684 P.2d 103, 113–14 (Alaska 1984).

3. In so holding the superior court determined that UCIDA met requirements for application of the doctrine of collateral estoppel identified in *Murray v. Feight*, 741 P.2d 1148, 1153 (Alaska 1987). The superior court further concluded that the State was afforded a full and fair opportunity to litigate the validity of the all-Alaskan policy in the *Morry* case.

4. Ninilchik raised several other issues on cross-appeal, but has chosen not to pursue them. UCIDA does not appeal from the denial of attorney's fees.

5. UCIDA and Ninilchik also note that the legislature subsequently amended the subsistence laws, Ch. 1, 2d Special Sess., SLA 1992. "The Cook Inlet subsistence salmon regulations at issue in this case have been reinstated, and there is now no case or controversy concerning the all Alaskans policy underlying those regulations."

sive. Assuming this aspect of the case has been mooted by subsequent developments, we conclude that the question of the application of non-mutual collateral estoppel against the State should be addressed under the public interest exception to the doctrine of mootness.[6]

### C. Application of Non–Mutual Offensive Collateral Estoppel Against the State [7]

■ There are three requirements for application of collateral estoppel:

(1) The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

(2) The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action;

(3) The issue in the first action must have been resolved by a final judgment on the merits.

*Murray v. Feight*, 741 P.2d 1148, 1153 (Alaska 1987). Although we have abandoned the requirement of mutuality of parties, we have stated that "[i]f the particular circumstances of the prior adjudication would make it unfair to allow a person who was not a party to the

first judgment to invoke … collateral estoppel then the requirement of mutuality must still be applied." *Pennington v. Snow*, 471 P.2d 370, 377 (Alaska 1970), *limited on other grounds by Kott v. State*, 678 P.2d 386, 391–93 (Alaska 1984) (declining to abandon mutuality requirement in criminal cases); *see also Pruitt v. State, Dep't of Pub. Safety*, 825 P.2d 887, 890 (Alaska 1992).

■ The State concedes that the three requirements for the application of collateral estoppel identified in *Murray* are present in the instant case.[8] The State contends, however, that considerations of basic fairness and the policy reasons endorsed by the U.S. Supreme Court in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), support a reversal of the superior court's application of non-mutual offensive collateral estoppel against the State on a significant question of law.

We conclude that the superior court properly applied non-mutual collateral estoppel against the State.[9] The exception to this doctrine which the *Mendoza* court created was one especially fashioned for the federal government as a litigant.[10] In *Mendoza* the

---

**6.** The test for application of the public interest exception to the mootness doctrine involves three main factors: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may repeatedly circumvent review of the issues and, (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine." *Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985); *see also Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 920 (Alaska 1991). In our view, the State persuasively demonstrates that the issue here meets all three requirements for invocation of the public interest exception to the mootness doctrine.

**7.** Relitigation of issues that have been litigated and determined in an earlier action by a final judgment are precluded by application of collateral estoppel. *DeNardo v. Municipality of Anchorage*, 775 P.2d 515, 517 (Alaska), *cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). Offensive use of collateral estoppel occurs where a plaintiff seeks to preclude a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against the same or a different party. *United States v. Mendoza*, 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571 n. 4, 78 L.Ed.2d 379 (1984). Defensive use of collateral estoppel occurs where a defendant seeks to prevent a plaintiff from relitigating an

issue the plaintiff has previously litigated unsuccessfully in another action against the same or different party. *Id.*

**8.** The State's concession reads in part: "[T]he state was a party to the prior *Morry* litigation, the issue of the 'all-Alaskan' interpretation of the subsistence statute was identical, and there was a final judgment on the merits in the superior court[]."

**9.** Our use of the term non-mutual offensive collateral estoppel in this case is limited to the decretal provisions of the lower court's decision. The term does not encompass the court's rationale or its judgment, nor does it encompass evidentiary facts as distinguished from ultimate facts.

**10.** In *Mendoza* the U.S. Supreme Court stated:

We have long recognized that "the Government is not in a position identical to that of a private litigant," both because of the geographic breadth of Government litigation and also, most importantly, because of the nature of the issues the Government litigates. It is not open to serious dispute that the government is a party to a far greater number of cases on a nationwide basis than even the most litigious

U.S. Supreme Court identified the following factors that militated against application of non-mutual offensive collateral estoppel against the United States government:

> (1) the desirability of "permitting several courts of appeals to explore a difficult question before this Court grants certiorari;"
>
> (2) the government's need for flexibility in determining when to appeal;
>
> (3) the importance of preserving policy choices for successive administrations.

*Id.* at 160–61, 104 S.Ct. at 572–73.

We think UCIDA's and Ninilchik's arguments distinguishing state litigation from federal litigation in the context of these three factors are persuasive. As to the first factor, they note that in contrast to a federal district court, the superior court's jurisdiction is statewide,[11] and that since a litigant in Alaska can appeal as a matter of right, there is no need to let an issue percolate prior to authorizing an appeal.[12] Additionally, allowing the State unlimited discretion to relitigate issues adversely decided against it would inevitably result in agency disregard for court orders.

Concerning the second factor, the State's attempt to equate the functions of Alaska's Attorney General with those of the United States Solicitor General do not withstand scrutiny. Unlike the Solicitor General, Alaska's Attorney General essentially litigates in a single jurisdiction. Consequently, the need to authorize appeals of only the strongest cases is not as compelling as it is in the diverse federal judicial system.

As to the third *Mendoza* factor, preserving policy choices for successive administrations, we agree with UCIDA and Ninilchik that this factor does not carry significant weight. Given the wide variety of options a new state administration has in regard to pursuing its own policy initiatives, we are not persuaded that this factor compels adoption of the *Mendoza* federal government exception to application of non-mutual offensive collateral estoppel.[13]

Furthermore, exempting the State from application of non-mutual collateral estoppel would result in inconsistent application of the law.[14] Where private litigants would be barred from litigating the same issue over

---

private entity. . . . Government litigation frequently involves legal questions of substantial public importance; indeed, because the proscriptions of the United States Constitution are so generally directed at governmental action, many constitutional questions can arise only in the context of litigation to which the Government is a party. . . .

A rule allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.

464 U.S. at 159–60, 104 S.Ct. at 572 (citation omitted).

**11.** AS 22.10.020(b).

**12.** UCIDA also notes that any potential benefit that Alaska courts might derive from relitigating legal issues would be minimal, since superior court opinions are generally unpublished and therefore not readily available throughout the Alaska judicial system.

**13.** Federal courts in New York also have declined to extend the *Mendoza* exception to state government, on the ground that the factors war-

ranting the federal exception did not apply to the state. *See Benjamin v. Coughlin,* 708 F.Supp. 570, 573 (S.D.N.Y.1989), *aff'd,* 905 F.2d 571, 576 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990).

**14.** Professor Motomura cites three goals that are commonly advanced in support of giving collateral estoppel effect to prior judgments: (1) efficiency, (2) repose, and (3) consistency. Hiroshi Motomura, *Using Judgments as Evidence,* 70 Minn.L.Rev. 979, 1003–04 (1986). Respect for prior judgments and a desire for consistent results is "the goal most clearly shared by collateral estoppel and evidence." *Id.* at 1005. Professor Motomura states:

> "According insufficient weight to prior decisions encourages disrespect and disregard of courts and their decisions and invites litigation." Both collateral estoppel and use of judgments as evidence are devices by which the fact finder in later litigation will give appropriate weight to prior proceedings. . . .
>
> The degree of deference a legal system gives to prior findings is an indication of how seriously the legal system regards those findings. It also reflects how seriously the legal system views itself or, if it did not make the finding, how seriously it views the system that made it. The degree of deference given to prior judgments also helps to determine whether an inev-

and over against different litigants, the State would be free to do so. A state exemption would result in fundamental unfairness to private litigants and a loss of public respect for the judicial system.

We conclude that the State's argument for adoption of the *Mendoza* exception for the state government to the application of non-mutual collateral estoppel should be rejected.[15]

### III. *CONCLUSION*

 The superior court's entry of final judgment on Count I of UCIDA's complaint is reversed based on *State v. Morry*, 836 P.2d 358 (Alaska 1992). We have considered and rejected the State's contention that it should be exempted from application of the doctrine of non-mutual offensive collateral estoppel. Whether Ninilchik is a public interest litigant entitled to recover full reasonable attorney's fees against the state is a moot question, since, in view of our disposition herein, the State was the prevailing party and public interest litigants who are not prevailing parties are not entitled to an award of attorney's fees.[16]

itably imperfect system can achieve the consistency of results that is the basis of public respect. *Id.* at 1005–06 (quoting Edward W. Cleary, *Res Judicata Reexamined*, 57 Yale L.J. 339, 345 (1948)) (footnotes omitted).

15. We also note our agreement with the superior court's ruling that the State in the *Morry* case was afforded a full and fair opportunity to litigate the validity of the all-Alaskan policy.

One additional facet of this question remains to be addressed. In its reply brief the State concedes that it "is still bound by the decisions of the superior court with respect to the specific parties and the facts before that court. For example, if the superior court invalidates a regulation, the state is bound by that ruling unless it is stayed or overturned on appeal."

In the instant case we think a persuasive argument can be made that under the terms of Judge Jeffery's judgment in the *Morry* case the State's all-Alaskan policy/regulation was invalidated, and that thereafter the Joint Boards of Game and Fisheries were prohibited by the terms of the judgment from employing their all-Alaskan policy in promulgating any future fish and game

regulations. Given the statewide jurisdiction of the superior court, the *Morry* decree was arguably binding on the Boards of Game and Fisheries in all four of Alaska's judicial districts.

16. Though our holding makes the State the prevailing party in this case, the State cannot recover attorney's fees from Ninilchik. We have consistently denied awards of attorney's fees against losing parties who have in good faith litigated issues of genuine public interest. *See Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 (Alaska 1984); *Anchorage v. McCabe*, 568 P.2d 986, 989 (Alaska 1977); *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974).

We have previously rejected arguments that subsistence use constitutes a private interest sufficient to deny public interest status. *Alaska Survival v. State, Dep't of Natural Resources*, 723 P.2d 1281, 1292 (Alaska 1986). If a litigant relies on hunting, fishing, and gathering resources "for personal rather than commercial purposes," then the party's economic interests are not so "substantial" that he or she would not qualify as a public interest litigant. *Id.* Under *Alaska Survival*, Ninilchik meets our test for determination of public interest status.