Victoria L. GOULD, Petitioner-Appellant,

v.

DEPARTMENT OF HEALTH AND SOCIAL SERVICES FOR the
STATE OF WISCONSIN, Respondent-Respondent.

Court of Appeals

*No. 97–2602–FT. Submitted on briefs December 1,
1997.—Decided January 29, 1998.*

(Also reported in 576 N.W.2d 292.)

357

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Karen S. Roehl* of Oshkosh.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maryann Sumi,* assistant attorney general.

Before Eich, C.J., Vergeront and Roggensack, JJ.

VERGERONT, J. Victoria Gould received a lump sum payment for retroactive Social Security Disability Income (SSDI) benefits, while she was receiving Aid to Families with Dependent Children (AFDC) benefits for herself and her son.[1] A Department of Health and Social Services (DHSS) hearing officer decided that

---

[1] The AFDC program provided financial assistance to needy dependent children and their parents or relatives who live with and care for them. *See* 42 U.S.C. § 601 (1985). The AFDC program is based on a scheme of cooperative federalism. *Woodman v. H&SS Dep't*, 101 Wis. 2d 315, 320, 304 N.W.2d 723, 725 (1981). Under the federal statute establishing the AFDC program each state may choose whether or not to participate, and, if it does so, it receives partial funding for its state AFDC program, on condition that it submits a plan for its program to the federal Department of Health and Welfare (now the Department of Health and Human Services) that contains those provisions mandated by federal statute. *Id.* Wisconsin has cho-

Gould was overpaid AFDC benefits as a result of that lump sum payment and was properly terminated from AFDC; and that her subsequent application for AFDC benefits for her son was properly denied. Gould appeals the trial court's order affirming that decision. She contends that DHSS erroneously interpreted federal law governing the AFDC program and, alternatively, that issue preclusion prevents DHSS from litigating this issue because two prior circuit court decisions decided the issue adversely to DHSS. We conclude that issue preclusion does not apply, DHSS's interpretation of the federal statute is a reasonable one that comports with the purpose of the pertinent statutes, and Gould's interpretation is not more reasonable. We therefore affirm.

## BACKGROUND

Gould applied for SSDI and Supplemental Security Income (SSI) benefits on January 12, 1990, due to various health problems.[2] In a decision dated January

---

sen to participate and has enacted §§ 49.19–49.197, STATS., establishing the program.

The Wisconsin Department of Workforce Development now administers the AFDC program and the "Wisconsin Works" program which will replace AFDC. 1997 Wis. Act. 3, §§ 100, 101. All state statutes unless otherwise indicated are to WISCONSIN STATUTES, 1995–96. All federal statutes unless otherwise indicated are to U.S.C. (Supp. 1997).

[2] The SSI program, 42 U.S.C. § 1381–1383 (Supp. 1997), is a federally funded and federally administered program designed to assist low income individuals who are aged, blind and disabled. After an individual applies for SSI benefits, the federal Social Security Administration (SSA), which administers the SSI program, generally takes a period of time to both determine the applicant's eligibility and then to begin making payments.

30, 1995, she was determined disabled effective January 12, 1990. Meanwhile, since March 1994, Gould had been receiving monthly AFDC benefits from Green County in the amount of $440 for herself and her minor child. In June 1995, Gould received an SSDI payment of $14,000, which included payments retroactive to January 12, 1990. She reported the payment to her county economic support worker, but no action was taken on her AFDC case as a result. In July 1995, Gould moved to Waushara County and began receiving

The period between the application date and the date the individual receives the first SSI payment is typically referred to as the "determination period." Once the individual is determined to have met SSI requirements, the Social Security Administration (SSA) considers the individual eligible for benefits as of the application date, see 42 U.S.C. § 1382(c)(6) (Supp. 1997), and the individual receives a retroactive lump sum payment for all benefits accrued during the determination period.

The SSDI program, codified at 42 U.S.C. §§ 401–33, is federally funded and is administered by the SSA. It provides benefits to disabled persons. However, the benefits are not based on financial need but are available only to disabled persons who have the requisite work history and have contributed to the social security program. See 42 U.S.C. §§ 423(a)(1)(A), (a)(1)(D) and (c)(1) (Supp. 1997). As in the SSI program, once the individual is determined eligible, the individual receives a lump sum payment covering the period since the date of application. A disabled person who receives monthly SSDI benefits that are below the SSI income level is eligible for some monthly SSI benefit, if the person meets other SSI eligibility criteria. Because the two programs are administered separately by the SSA, a recipient may be notified of and begin receiving payments under one program before being notified of eligibility for the other program.

AFDC benefits there in August.[3] In December 1995, Gould received her retroactive SSI payment that covered the "determination period," the time from the date of application to the date of receipt of benefits.[4] The amount of the retroactive SSI payment reflected a deduction for the AFDC benefits and the SSDI benefits she received during the period, as is required by federal law. *See* 42 U.S.C. §§ 1382(b), 1382a(a)(2) and (b) (Supp. 1997).

When Gould reported the SSI retroactive payment of December 1995 to the Waushara County agency, it became apparent to the agency that Gould received the SSDI retroactive payment in June 1995. The agency determined that, based on the receipt of that sum in June 1995, Gould should have been terminated from

---

[3] The hearing examiner found that at the time of her application and interview for AFDC in Waushara County, Gould failed to mention the receipt of the lump sum SSDI payment in June. DHSS asserts in its brief that this explains why Waushara County initially granted her AFDC benefits. Gould asserts in her brief that during the application process she informed the Waushara County worker that she was an SSDI recipient since June 1995. The reason that Waushara County did not act on Gould's AFDC case until December 1995—whether the "fault" of the county, Gould, both, or neither—is not an issue on this appeal and therefore we need not address this further. We observe that it is undisputed that Gould told her Green County worker about the receipt of the June 1995 SSDI payment shortly after she received it, and the examiner so found. Although the examiner found that Green County took no action on Gould's AFDC case based on this information, there is no finding as to why that was so, and the record does not disclose any reason. Resolution of this question is also unnecessary to this appeal.

[4] In February 1996, Gould began receiving regular monthly benefits from SSA.

AFDC effective August 1, 1995. The agency also decided that under its "lump sum policy," Gould would remain ineligible for twenty-six months. The "lump sum policy" is required by federal statute and is codified in our state statute and regulation. *See* 42 U.S.C. § 602(a)(17) (Supp. 1997); 45 C.F.R. § 233.20(a)(3)(ii)(F) (1997); 45 C.F.R. § 49.19(4)(k) (1997); WIS. ADM. CODE § DWD 11.28(8). Under the "lump sum policy" certain payments received by AFDC recipients, including retroactive SSDI benefits, are considered "lump sums" and result in AFDC ineligibility for a time. This AFDC ineligible period is computed by dividing the lump sum by the appropriate assistance standard. On December 19, 1995, the agency notified Gould of its determination and warned that her AFDC benefits would cease effective December 31, 1995. It also notified her that the AFDC payments she received from August 1995 through December 1995 were overpayments and would have to be repaid. On February 2, 1996, Gould applied for AFDC benefits for her son only, and the agency denied her application on the ground that she was ineligible under the "lump sum policy."

Gould appealed both the agency's decision to deny her son's application and the agency's determination of an overpayment. She contended at the hearing before DHSS, as she did before the trial court and does on this appeal, that the "lump sum policy" was inapplicable to her because in June 1995, when she received the SSDI retroactive payment, she was an SSI recipient not an AFDC recipient, and her income and assets could not be considered in determining her son's AFDC eligibil-

ity. The statute she relies on, 42 U.S.C. § 602(a)(24), provides:[5]

> [A state AFDC plan . . . must] provide that if an individual is receiving benefits under [SSI] . . . then, for the period for which the benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this [subchapter] and his income and resources shall not be counted as income and resources of a family under this [subchapter].

Gould's position is that, since she was determined eligible for SSI benefits retroactive to a date prior to the date on which she received the SSDI retroactive payment, the date of receipt of that lump sum was within "the period for which such [SSI] benefits are received," and she was an SSI recipient, not an AFDC recipient, on that date. She concludes that she was therefore not overpaid AFDC, and that her income and resources could not be counted in determining her son's AFDC eligibility.

The DHSS hearing examiner decided that Gould was not an SSI recipient in June 1995 because she had not yet received any SSI check, whether for retroactive or current monthly benefits. The examiner relied on the DHSS AFDC HANDBOOK, Appendix 18.1.0 (10–1–92), which interprets the federal statute and the

---

[5] The federal regulation implementing the statute provides:

[A state plan for AFDC must] provide that the needs, income, and resources of individuals receiving SSI benefits under title XVI . . . for the period for which such benefits or payments are received, shall not be included. . . .

45 C.F.R. § 233.20(a)(1)(ii) (1997).

corresponding state regulation[6] to mean that an SSI recipient is someone who is "actually receiving SSI checks" such that "someone who has been determined eligible for SSI [but] who hasn't yet received benefits is not yet an SSI recipient." Since Gould was not an SSI recipient when she received the SSDI retroactive payment, the examiner decided the "lump sum policy" was properly applied to Gould and to the retroactive SSDI payment. The examiner acknowledged that DHSS arrived at the same conclusion in a case concerning another individual, and that the circuit court in *Schilling v. Department of Health and Social Services*, 95-CV–1584 (Dane County Cir. Ct., Jan. 12, 1996), reversed that decision. However, the examiner stated, that decision was never appealed to the court of appeals and was not binding on DHSS in cases involving other individuals. The examiner explained in detail why he did not agree with the legal analysis of that circuit court decision.

Gould appealed the hearing examiner's decision pursuant to § 227.52, STATS., and the circuit court affirmed. The court rejected Gould's argument that issue preclusion barred DHSS from litigating this issue because it had been decided against the agency in *Schilling*. The court concluded that the statutory language was ambiguous, that DHSS's interpretation of the statute was entitled to deference, but that even without according DHSS deference, its interpretation was the more "solid."

---

[6] WISCONSIN ADM. CODE § DWD 11.20 provides:

No person receiving SSI shall be eligible for AFDC. The income and assets of AFDC recipients shall not be used when determining eligibility of others for AFDC or the amount of assistance granted.

## DISCUSSION

*Issue Preclusion*

We consider first Gould's argument that issue pre-clusion[7] applies based on the January 12, 1996 *Schilling* decision (*Schilling I*) and a later related deci-sion in *Schilling v. Department of Health and Social Services*, Case No. 96-CV–121 (Dane County Cir. Ct., July 24, 1996) (*Schilling II*). In *Schilling I*, Sandra Schilling appealed a decision by a DHSS hearing exam-iner that the retroactive SSDI benefit check she received was properly considered by the county agency in determining her children's AFDC eligibility and ben-efit level. Schilling made the same argument that Gould makes concerning 42 U.S.C. § 602(a)(24), and the circuit court accepted that argument, reversing DHSS's decision. DHSS did not appeal the circuit court's decision.

*Schilling II* dealt with an overpayment issue that resulted from the application of the lump sum rule to Schilling's receipt of the SSDI retroactive payment. That issue, unlike in this case and for reasons not perti-nent here, proceeded separately from the issue of other family members' eligibility. The circuit court in *Schil-ling II* concluded that the *Schilling I* court decided the effect of retroactive SSI eligibility on AFDC benefit calculations under 42 U.S.C. § 602(a)(24) and that issue preclusion barred DHSS from relitigating this

[7] In *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995), the supreme court adopted the terms "claim preclusion" and "issue preclusion" to replace the terms res judicata and collateral estoppel. Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actu-ally litigated and decided in a prior action. *Id.*

issue. In the alternative, the *Schilling II* court adopted the reasoning and analysis of the *Schilling I* court concerning the application and interpretation of the statute.

Gould recognizes that she was not a party in the *Schilling* cases, but she contends that issue preclusion is nevertheless appropriate under *Michelle T. v. Crozier*, 173 Wis. 2d 681, 688–89, 495 N.W.2d 327, 330–31 (1993). *Crozier* held that trial courts may apply issue preclusion when invoked by a plaintiff (offensive use) who was not a party in the prior litigation (non-mutual use) against a defendant who was, if application of the doctrine is fundamentally fair to the defendant. The court listed several factors to be considered in the fundamental fairness analysis. *Crozier*, 173 Wis. 2d at 689, 495 N.W.2d at 330.[8] Gould argues that under the *Crozier* factors, it is fundamentally fair to apply issue preclusion against DHSS. DHSS responds that the defendant in *Crozier* was a private party, not a governmental agency; there is no authority in Wisconsin for using offensive non-mutual issue preclusion against

---

[8] These factors are:

 (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel fundamentally unfair, such as an inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Michelle T. v. Crozier*, 173 Wis. 2d 681, 688–89, 495 N.W.2d 327, 330–31 (1993).

governmental agencies; and there is persuasive authority from other jurisdictions against this.

■

The question whether courts may apply issue preclusion in a particular category of cases is a question of law, which we review independently of the trial court.[9] *See Crozier,* 173 Wis. 2d at 686, 495 N.W.2d at 329 (whether Wisconsin courts may permit the use of offensive [issue preclusion] is a question of law reviewed without deference to the lower court). We agree with DHSS that *Crozier* does not indicate that offensive

[9] As we discuss later in this opinion, on appeals involving decisions of administrative agencies, we generally review the decision of the agency, not the decision of the circuit court. *See Public Serv. Corp. v. Pub. Serv. Comm'n,* 156 Wis. 2d 611, 616, 457 N.W.2d 502, 504 (Ct. App. 1990). Although we are not bound by an agency's legal conclusion, we give varying degrees of deference to them, depending on the circumstances. *See UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57–61 (1996). The parties do not discuss the proper scope of our review on the question of issue preclusion (as opposed to the proper interpretation of 42 U.S.C. § 602(a)(24)). It appears from the hearing examiner's decision that he did not rule on whether issue preclusion applied against DHSS but, rather, on whether *Schilling I* was binding precedent and, if not, whether it was correctly decided and therefore persuasive although not binding. (*Schilling II* was decided after the examiner's decision.) This makes sense because, at the administrative hearing, Gould was appealing a decision of the Waushara County Department of Social Services, and, as such, DHSS was not litigating or relitigating anything in that forum. Thus, the invocation of issue preclusion against DHSS first occurred in circuit court, where DHSS was the party defending against Gould's appeal of its decision after the hearing. We are therefore reviewing the trial court's decision not to apply issue preclusion against DHSS in the court proceedings initiated by Gould under ch. 227, STATS.

non-mutual issue preclusion may be applied against governmental agencies in the same manner as it may be applied against private litigants. *Crozier* concerned a private party defendant and nothing in the court's opinion suggests the court considered whether the same test should apply against a governmental agency defendant. We are unaware of any other Wisconsin case that has addressed this issue.[10]

Other jurisdictions have, however, done so. In *United States v. Mendoza*, 464 U.S. 154 (1984), the Court held that offensive non-mutual issue preclusion was not available against the federal government. In that case, the defendant was a federal agency, the Immigration and Naturalization Service. The Court noted that the recent abandonment of mutuality in private parties' litigation, and the extension to include offensive use, furthered the policies of conserving judicial resources, minimizing the cost and vexation of multiple lawsuits, and preventing inconsistent decisions. *Mendoza*, 464 U.S. at 159–60. When private rights between private parties were being litigated, there was no sound reason not to apply a rule that would further these policies and limit parties to one full and fair opportunity to litigate a particular issue. *Id.* However, the Court observed, courts had long recognized in various contexts that the government is not in the same position as a private litigant, both because of the geographic breadth of government litigation and the number and nature of the issues the government

---

[10] Gould argues that *Lindas v. Cady*, 183 Wis. 2d 547, 515 N.W.2d 458 (1994), supports her position. But in *Lindas*, the court applied issue preclusion against the *individual*, not the administrative agency, based on a prior administrative agency decision that the individual did not appeal to circuit court. *Lindas*, 183 Wis. 2d at 560, 515 N.W.2d at 464.

litigates, making it more likely that the government, as opposed to a private litigant, will be involved in litigation against different parties that, nonetheless, involve the same legal issues. *Id.* at 159–60. The Court reasoned that applying non-mutual issue preclusion against the government would thwart the development of important questions of law by freezing the first final decisions on a particular legal issue. *Mendoza*, 464 U.S. at 160. Also, the government would be forced to abandon its policy of balancing many factors in deciding whether to appeal adverse rulings, leading to appeals of every adverse decision. *Id.*

Some federal courts have interpreted *Mendoza* as establishing an absolute rule that non-mutual offensive issue preclusion is never available against the federal government. *See Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 322 (5th Cir. 1994). Others have concluded that *Mendoza* permits application of the doctrine in certain circumstances. *See Benjamin v. Coughlin*, 905 F.2d 571, 575–77 (2d Cir. 1990). When courts have been faced with the question presented in this case—whether the doctrine may be applied against state agencies—some have followed the reasoning of *Mendoza* and have held that it is unavailable. *See Bd. of Educ. of St. Louis v. City of St. Louis*, 879 S.W.2d 530, 531 (Mo. 1994). Others have concluded that the reasoning is inapplicable to state agencies and have applied the doctrine on the same terms as those governing private litigants in the courts of the state. *See State v. United Cook Inlet Drift Ass'n*, 868 P.2d 913, 917 (Alaska 1994).

We find the reasoning of *Mendoza* regarding the differences between government and private litigants to be sound, and applicable in significant respects to state agencies. State agencies, such as DHSS, are

much more likely than private litigants to litigate the same legal issue against different parties. The legal issues, however resolved, often have many and complex consequences—for the government and for other individuals. Gould's position would require that a state agency appeal every adverse decision because if it did not do so for any reason, the agency would be foreclosed from relitigating against another party so long as the first proceeding provided a full and fair opportunity for adjudication, as defined in *Crozier*. However, the "fundamental fairness" factors of *Crozier* simply do not take into account the significant differences between the government and private parties in litigation.

We conclude that a state agency's position as a litigant is sufficiently different from that of a private litigant such that the economy of interests underlying a broad application of issue preclusion do not, as a general rule, justify the non-mutual offensive application of the doctrine against the agency. We need not decide whether there are any circumstances that might justify applying the doctrine against a state agency and, if so, what they are: we are satisfied that this case does not present circumstances that might justify the creation of such an exception. We conclude that the trial court correctly decided that issue preclusion does not apply in this case.

*Standard of Review*

We therefore turn to the issue of whether DHSS properly interpreted 42 U.S.C. § 602(24) in deciding that Gould was not an SSI recipient when she received the retroactive SSDI check and that the "lump sum policy" was therefore properly applied to her. This presents a question of law, and, as we have noted

above, although we are not bound by DHSS's decision on a question of law, we may accord it deference. *See UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). We give great weight deference only when:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . . The agency's interpretation will provide uniformity and consistency in the application of the statute.

*UFE*, 201 Wis. 2d at 284, 548 N.W.2d at 61. We give a lesser amount of deference—due weight—when the agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than the court to make judgments regarding the interpretation of the statute. *UFE*, 201 Wis. 2d at 286, 548 N.W.2d at 62.

■■■

Under the great weight standard, we uphold an agency's reasonable interpretation of the statute if it is not contrary to the clear meaning of the statute, even if we conclude another interpretation is more reasonable. *UFE*, 201 Wis. 2d at 287, 548 N.W.2d at 62–63. Under the due weight standard, we uphold the agency's reasonable interpretation if it comports with the purpose of the statute and we conclude there is not a more reasonable interpretation. *Id.* We give no deference to the agency, and review the issue de novo, when the issue before the agency is one of first impression or the agency's position has been so inconsistent as to provide no real guidance. *UFE*, 201 Wis. 2d at 285, 548 N.W.2d at 262.

The parties disagree on the degree of deference we should afford DHSS's decision. Gould argues that we should accord no deference, because this issue has not been addressed before except in the *Schilling* cases; the agency has no special expertise in interpreting the federal statute; and its position was rejected in *Schilling I* and *Schilling II*. Gould contends that the AFDC Handbook provision does not warrant any deference because it is "sketchy" and of recent origin—dated 10–1–92. DHSS responds that this court should accord great weight deference to its decision because all four criteria for that standard of review are met.

We do not agree with Gould that de novo review is appropriate. State law charges DHSS with supervising the administration of the AFDC program, which is carried out by county agencies under contract with DHSS. Sections 49.35(1) and (2), and 49.33(2), STATS. DHSS is responsible for submitting the state AFDC plan to the federal agency and for complying with all federal requirements regarding the state plan. Section 49.35(1)(a). As is plain by its terms, 42 U.S.C. § 602(a)(24) is a mandatory federal provision. Besides promulgating administrative rules governing the AFDC program, DHSS is required to adopt policies and procedures and a uniform county policy and procedure manual to ensure uniform administration throughout the state. Sections 49.32(3) and 49.33(3), STATS. The AFDC HANDBOOK relied on by DHSS was adopted pursuant to this statutory mandate.

In *Tannler v. Department of Health and Social Services*, 211 Wis. 2d 179, 184–85, 564 N.W.2d 735, 738 (1997), the court concluded that a provision in the DHSS MEDICAL ASSISTANCE HANDBOOK on which DHSS relied demonstrated that DHSS possessed a specialized knowledge on the topic and therefore accorded its

interpretation of the federal and state statute due deference, even though the issue before the court was one of first impression.[11] We see no basis for not according DHSS's decision in this case at least that same degree of deference. The AFDC HANDBOOK and the MEDICAL ASSISTANCE HANDBOOK are both produced by DHSS under state statutory authority[12] and have the same purpose in the respective programs. Neither the "brevity" of the AFDC HANDBOOK provision nor the 1992 release date is a significant basis for distinguishing this case from *Tannler*.

In *Tannler*, as here, the interpretation of a federal statute was at issue—in that case, 42 U.S.C. § 1396(e)(1), relating to eligibility for the medical assistance program. The medical assistance program is similar to AFDC in that federal funds are available to states which choose to participate if the state complies with mandatory federal provisions; and DHSS is

---

[11] As the court explained in *UFE Inc. v. Labor and Industry Review Commission*, 201 Wis. 2d 274, 286–87, 548 N.W.2d 57, 62 (1996):

> Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question. Since in such situations the agency has had at least one opportunity to analyze the issue and formulate a position, a court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.

[12] Under § 49.45(34), STATS., DHSS is directed to prepare a medical assistance manual that is consistent with the federal statute, 42 U.S.C. § 1396(a)–(u), for counties to use in administering the medical assistance program.

charged under state law with administering the program in Wisconsin in a way that provides the most medical assistance benefits available under federal law. *See* § 49.45(1), STATS. Thus, both here and in *Tannler*, DHSS's responsibility includes interpreting and applying the federal statutes governing the assistance programs as defined by state law. This distinguishes our case and *Tannler* from cases where deference was not accorded a state agency in its interpretation of a federal statute. *See, e.g., American Family Mut. Ins. Co. v. Dep't of Revenue*, 214 Wis. 2d 576, 571 N.W.2d 710 (Ct. App. 1997).

We also reject Gould's contention that DHSS's interpretation is entitled to no deference because the courts in *Schilling I* and *Schilling II* concluded it was erroneous. Gould is correct that we have held that when there have been repeated court reversals of an agency's interpretation of a statute, there is no clear agency precedent that is entitled to deference. *Larson v. LIRC*, 184 Wis. 2d 378, 387, 516 N.W.2d 456, 459–60 (Ct. App. 1994). However, we do not find that principle applicable here. First, *Schilling I* and *Schilling II* cannot fairly be described as repeated court reversals of DHSS's interpretation—they concerned one AFDC case. Second, the court in *Schilling I* employed a de novo standard of review, after concluding that there was no agency precedence.[13] Apparently the AFDC HANDBOOK was not brought to the court's attention. In any event, the court did not have the benefit of the supreme court's decision in *Tannler*, nor did the court

---

[13] In its decision the hearing examiner referred, by case number only, to three agency decisions. The *Schilling I* court decided that one involved a different issue and did not discuss the others. In its brief on appeal DHSS does not discuss these three decisions.

374

in *Schilling II*. We cannot logically accord DHSS's interpretation less deference than it is entitled to under *Tannler* because of a circuit court decision that did not accord it that deference.

We are, however, unpersuaded by DHSS that we should accord great weight to its interpretation. We know of only one prior agency decision applying the AFDC HANDBOOK provision at issue here—*Schilling*. This does not constitute the type of experience and expertise that is generally required for great weight deference. *See UFE*, 201 Wis. 2d at 285, 548 N.W.2d at 61–62. Therefore, we will give due weight and we will adopt DHSS's interpretation if it is reasonable and comports with the purpose of the statute, and if another interpretation is not more reasonable.

*Statutory Interpretation*

The parties have brought to our attention two cases from other jurisdictions that have decided whether an SSI applicant is an AFDC recipient during the SSI determination period before SSI benefits are actually received—*Nelson v. Betit*, 937 P.2d 1298 (Utah Ct. App. 1997), and *Gleim v. Pennsylvania Dep't of Pub. Welfare*, 409 A.2d 951 (Pa. Commw. Ct. 1980).[14] They reach opposite results.

---

[14] The state also relies on *Commonwealth v. United States*, 752 F.2d 795 (3d Cir. 1984), while Gould relies on *Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978), as well as *Wilson v. Heckler*, 580 F. Supp. 1387 (D.D.C. Cir. 1984), and *Fitzgerald v. Schweiker*, 538 F. Supp. 992 (D. Md. 1982), which followed *Jones*. While these cases do involve interpretation of 42 U.S.C. § 602(a)(24), the issues are sufficiently different from this case such that further discussion is unnecessary to our decision.

*Nelson*, like this case, concerned an AFDC recipient who received an SSDI retroactive payment during the SSI determination period. The state agency adopted a policy consistent with a federal AFDC Action Transmittal.[15] Pursuant to that policy, it determined that the individual was an AFDC recipient until the actual receipt of SSI benefits, applied the "lump sum policy," and terminated her and her son from AFDC for a particular period. *Nelson*, 937 P.2d at 1300. The court decided that the language of 42 U.S.C. § 602(a)(24) was ambiguous and that the federal agency policy, although not having the force and effect of law, should be followed if it was reasonable and consistent with the overall design and purpose of the AFDC program and the statute's objectives. *Id.* at 1302–1306. The court concluded that the federal agency's interpretation, adopted by the state agency, was a reasonable interpretation of 42 U.S.C. § 602(a)(24), was consistent with the purpose of the statute and with the underlying purpose of the AFDC program, and furthered the purpose of the lump sum statute.

In *Gleim*, the facts were somewhat different in that the SSI applicant did not receive an SSDI retroactive payment and there was no lump sum rule.

---

[15] AFDC ACTION TRANSMITTAL, AFC-AT–93–20 at 2, provides:

> AFDC benefits for the SSI retroactive period will not be computed because they are correct payments.
>
> Section [602(a)(24)] which prohibits counting the income and resources of an SSI recipient for AFDC purposes, is applicable beginning on the date SSI payments are actually received. Therefore, since ineligibility does not begin prior to the receipt of the SSI payment, AFDC payments issued during the SSI application processing period and prior to actual receipt of SSI are correct payments.

*Nelson v. Betit*, 937 P.2d 1298, 1305 (Utah Ct. App. 1997).

However, the issue is similar to this case in that the SSI applicant contended that his income should have been excluded when computing the AFDC grant for other family members because, when they applied for AFDC, he had already received notification that he was eligible for SSI. The state agency determined that his income should be counted (apparently he had income from a source other than AFDC and SSI) until the date when he actually received SSI benefits. *Gleim*, 409 A.2d at 952. The court reversed, deciding that under the plain language of 42 U.S.C. § 602(a)(24), he was an SSI recipient for the entire determination period even though he did not receive SSI benefits until a later date. *Id.* The court also noted that the state agency's interpretation "led to illogical and inconsistent results," because under its interpretation SSI applicants applying on the same date are considered SSI recipients on various dates, depending on when they first receive benefits. *Id.* at 953.

We disagree with the court in *Gleim* that the language of 42 U.S.C. § 602(a)(24) plainly provides that an SSI applicant is an SSI recipient during the determination period but before the actual receipt of benefits. The *Gleim* court ignores the phrase "is receiving [SSI] benefits." It also does not accord any deference to the agency's interpretation of the statute. We therefore do not consider its analysis to be helpful. While we consider the court's reasoning in *Nelson* to be more persuasive, we undertake our own analysis.

We begin with the language of 42 U.S.C. § 602(a)(24). It plainly applies once SSI benefits are actually received, but we do not agree with Gould, or the court in *Gleim*, that its application to the determination period, prior to the actual receipt of SSI, is clear. The phrase "if an individual is receiving benefits under

the [SSI program]" suggests that there must be an actual receipt of SSI benefits. The phrase "for the period for which such benefits are received" could refer back to that phrase and mean for the period for which current monthly benefits are actually received. The phrase "for the period for which such benefits are received" might also mean the entire determination period. However, under this interpretation, the phrase "is receiving benefits" appears to have no function. Gould's interpretation emphasizes the phrase "for the period for which such benefits are received" but ignores the phrase "is receiving benefits."

We conclude that the statute is ambiguous and that DHSS provides a reasonable interpretation of the statutory language. DHSS's interpretation gives meaning to both phrases by limiting the phrase "for the period for which such benefits are received" by the phrase "is receiving benefits." This interpretation is also consistent with the purpose of the statute, "the lump sum policy" and the AFDC program.

The AFDC program's principal purpose is to help parents and relatives of needy, dependent children "attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." 42 U.S.C. § 601. Because the AFDC program is based on financial need, all the family's available income and resources must be considered in determining the family's eligibility and the level of benefit payments. *See* § 49.19(4)(es), STATS. The purpose of the lump sum rule is to encourage recipients to budget lump sums so those sums replace the family's monthly AFDC check. *See Gardebring v. Jenkins*, 485 U.S. 415, 422 n.9 (1988). Under the AFDC program the family's total income and resources are considered in determin-

ing AFDC eligibility and grant amount. However, 42 U.S.C. § 602(a)(24) functions as an exception in that it requires the State to disregard the income and resources of SSI recipients for purposes of determining a family's AFDC eligibility. The effect of this statute is to prevent an individual from receiving both AFDC and SSI benefits, while at the same time ensuring that other family members remain eligible for AFDC. *See Commonwealth v. United States*, 752 F.2d 795 (3d Cir. 1984); *see also Zambardino v. Schweiker*, 668 F.2d 194, 200 (3d Cir. 1981); *Fitzgerald v. Schweiker*, 538 F. Supp. 992, 1001 n.10 (D. Md. 1982).

DHSS's interpretation carries out the purpose of 42 U.S.C. § 602(a)(24) of preventing an individual from simultaneously receiving both SSI and AFDC benefits while ensuring that other family members remain eligible for AFDC benefits. This interpretation provides for AFDC payments to SSI applicants during the determination period, thus promoting the overall purpose of the AFDC program of providing assistance to needy children and their caretakers. And, at the same time, it promotes responsible budgeting through the application of the lump sum policy.

We observe, as did the court in *Nelson*, that DHSS's interpretation is consistent with that of the secretary of the federal Health and Human Services Agency as expressed in the 1993 AFDC Action Transmittal. *See* note 15. This transmittal explains that while an individual may not receive both AFDC and SSI benefits simultaneously, states are required to provide AFDC benefits to an SSI applicant during the determination period. It also supports DHSS's position that it is the actual receipt of SSI payments that determines whether one is a SSI recipient or an AFDC recipient under 42 U.S.C. § 602(a)(24).

We conclude that DHSS's interpretation is at least as reasonable as Gould's interpretation. First, it gives meaning to both phrases "is receiving benefits" and "for the periods for which benefit is received" rather than only the latter, as does Gould's interpretation. Second, it comports with the reality that the SSI applicant is an AFDC recipient during the determination period in that the recipient is actually receiving AFDC benefits. Gould is certainly not suggesting that she should not have received AFDC benefits during the determination period.

Gould argues that her interpretation is correct because, in computing the amount of retroactive SSI benefits she is entitled to, the amount of AFDC she received during the determination period was deducted, as required by federal law. *See* 20 C.F.R. § 412.420(4) (1997); 20 C.F.R. § 414.1102 (1997). This deduction is simply another means of making sure that an individual is not simultaneously receiving benefits under both programs. Although the AFDC benefits actually received during the determination period are later deducted from the SSI retroactive benefits, it does not follow that it is unreasonable to consider the individual an AFDC recipient and subject to AFDC's rules regarding income and assets while the individual is actually receiving AFDC benefits.

Gould also points out that, had she received her SSI benefits on the same date as she received the SSDI retroactive lump sum, she would have on that date been considered an SSI recipient, no longer an AFDC recipient, and the "lump sum policy" would not have applied to her. This difference in result is a consequence of the different processing systems in the SSDI and SSI programs. Gould's interpretation of the AFDC

statute is not more reasonable simply because it maximizes Gould's total benefits when she is eligible for programs other than AFDC.

In summary, we conclude that the doctrine of issue preclusion does not apply in this case against DHSS. DHSS's termination of the AFDC grant for Gould and her son and its determination of an overpayment pursuant to the "lump sum policy" was based on a reasonable interpretation of 42 U.S.C. § 602(a)(24), one consistent with the federal agency's interpretation and with the purposes of the pertinent statutory provisions. Gould's interpretation of that statute is not more reasonable. Since the "lump sum policy" was properly applied to Gould and to her son, DHSS's denial of the application for AFDC benefits for her son during the period of ineligibility required by the lump sum rule was also proper.

*By the Court.*—Order affirmed.