265 Wis.2d 829 (2003)
2003 WI App 145
667 N.W.2d 791
Cir. Ct. No. 01CV7806 Leane TERIACA, Plaintiff-Appellant,
v.
MILWAUKEE EMPLOYES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD, Defendant-Respondent.
Cir. Ct. No. 01CV10007
Richard T. JASSO, Plaintiff-Respondent,
v.
MILWAUKEE EMPLOYES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD, Defendant-Appellant.
Nos. 02-2545, 02-2720.
Court of Appeals of Wisconsin.
Submitted on briefs April 1, 2003.
Decided June 10, 2003.
*834 In case No. 02-2545, on behalf of the plaintiff-appellant Leane Teriaca, the cause was submitted on the briefs of Rebecca D. Boyle and Paul H. Beard of Fuchs, DeStefanis & Boyle, S.C., of Milwaukee.
In case No. 02-2720, on behalf of the defendant-appellant Milwaukee Employes' Retirement System/Annuity *835 and Pension Board, the cause was submitted on the briefs of Grant F. Langley, city attorney, and Maurita Houren, assistant city attorney.
In case No. 02-2545, on behalf of the defendant-respondent Milwaukee Employes' Retirement System/Annuity and Pension Board, the cause was submitted on the brief of Grant F. Langley, city attorney, and Maurita Houren, assistant city attorney.
In case No. 02-2720, on behalf of the plaintiff-respondent Richard T. Jasso, the cause was submitted on the brief of Rebecca D. Boyle and Paul H. Beard of Fuchs, DeStefanis & Boyle, S.C., of Milwaukee.
Before Fine, Schudson and Curley, JJ.
¶ 1. CURLEY, J.
Leane Teriaca appeals from the trial court's order affirming the termination of her duty disability retirement (DDR) allowance by the City of Milwaukee Employes' Retirement System/Annuity and Pension Board (Board).[2] The Board also appeals the reversal of its decision terminating Richard Jasso's DDR allowance. We determine the phrase "fit for service," found in Chapter 36 of the Milwaukee City Charter (MCC), is ambiguous; thus, we must harmonize this phrase with the wording of other ordinances dealing with the City's retirement plans. In doing so, we determine that a recipient found no longer "disabled" as a result of a work-related injury, but not "fit for service" because of other unrelated injuries or conditions, is ineligible for DDR. We also are satisfied that no constitutional, *836 statutory or contractual rights were violated by the Board's decisions, and that sufficient evidence was presented to the Board to support its decisions. Thus, we conclude that the Board properly terminated DDR benefits in both cases. Consequently, we affirm the trial court's order in Teriaca's case, and reverse the trial court's order in Jasso's case.

I. BACKGROUND.
¶ 2. Teriaca and Jasso are both City of Milwaukee police officers who were injured while on duty and who were found eligible for DDR allowances pursuant to MCC § 36-05-3-a. A DDR is one of several types of benefit packages offered by the City of Milwaukee Employes' Retirement System (MERS). See MCC § 36-05-3. The plan also authorizes an ordinary disability retirement allowance, see MCC § 36-05-2-b, and a service retirement allowance, see MCC § 36-05-1.
Leane Teriaca
¶ 3. Teriaca began working for the Milwaukee Police Department in October of 1975. In 1981, Teriaca was injured when she slipped and fell from a police car. In 1983, she was injured again when she was kicked by a prisoner. Teriaca also strained her back during an off-duty arrest in 1984. As a result, she claimed work injuries consisting of neck, low back and upper extremities pain. She was placed on modified duty from 1983 until 1988. She first applied for DDR in 1986. Because MCC § 36-05-3-c-1-a dictates that applicants for DDR must submit to a medical panel examination, three medical doctors examined Teriaca, but they could not agree on whether she was disabled as a result of a work-related injury. Ultimately, the medical panel certified *837 to the Board that Teriaca was not eligible for DDR and her request was denied by the Board. Unaccepting of this decision, Teriaca sought both a review and, later, an appeal. The independent examiner disagreed with the earlier decision, principally because one of the doctors changed his opinion, and the Board eventually granted Teriaca's request for DDR on August 1, 1988, with an effective date in January 1988.
¶ 4. After being granted DDR, recipients under MCC § 36-05-3-c-1-a are required to have an annual physical examination. As a result, Teriaca was examined periodically after being granted DDR. However, while her DDR was continued, the doctors involved in these medical reviews were not always unanimous in finding Teriaca disabled as a result of work-related injuries. Over the years, several of the doctors suggested that her complaints were possibly the result of psychiatric problems. In 1989, the Board suspended Teriaca's benefits and ordered her to return to work on limited duty. Her benefits, however, were subsequently restored. She continued to be eligible for DDR benefits until 2000, when the Board accepted the recommendation of the majority of the medical panel that she was no longer suffering from her work-related injuries. She was not able to return to work full-time, however, because of other non-work-related medical conditions.
¶ 5. After the Board determined that Teriaca was no longer eligible for DDR benefits, Teriaca availed herself of the procedure set forth in WIS. STAT. § 68.09 (1999-2000),[3] and demanded an independent review of *838 her case. The independent reviewer affirmed the findings of the Board, determining that her complaints were "subjective in nature." Teriaca then appealed that decision, and the Board's decision was ultimately affirmed by an independent hearing examiner. The Board adopted the hearing examiner's recommendation and Teriaca's application for the continuation of her DDR benefits was denied. Teriaca then sought certiorari review. The trial court affirmed the Board's decision.
Richard Jasso
¶ 6. Jasso became a City of Milwaukee police officer in 1980. He injured his knee in late 1980 while he was pursuing a suspect. In 1983, he also injured his left elbow during combat training. Approximately one year *839 later, he applied for DDR benefits. His application was granted in May 1985. He continued on DDR until 1989, when he was removed from DDR status. Like Teriaca, Jasso was reinstated by court order after several other DDR recipients challenged the Board's decision to require them to return to the workforce on limited duty. Between 1990 and 2000, Jasso was reexamined to determine if he still suffered from a work-related injury. As a result of these physical exams, he continued to receive DDR benefits. In 2000, a medical reexamination was requested of Jasso. After his examinations, a majority of the medical panel certified him as ineligible for DDR. The Board accepted the recommendation of the medical panel and terminated Jasso's DDR benefits. Jasso then filed for review and an independent reviewer affirmed the Board's termination. Jasso appealed the Board's decision to a hearing examiner, who also affirmed the Board's decision. Afterwards, Jasso sought certiorari review. The trial court reversed the Board's decision, ruling that the Board proceeded on an improper legal standard.

II. ANALYSIS.
[1,2]
¶ 7. On appeal from a decision on a writ of certiorari, this court reviews the record and findings of the administrative board, not the judgment and findings of the trial court. See State ex rel. Harris v. Annuity & Pension Bd., 87 Wis. 2d 646, 651, 275 N.W.2d 668 (1979). When we review a decision of the Board, the scope of our review is limited to the four issues presented on a common law writ of certiorari: "(1) [w]hether the Board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented *840 its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." State ex rel. Ruthenberg v. Annuity & Pension Bd., 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979) (footnote omitted). Thus, we decide the merits here independent of either of the trial court decisions.
¶ 8. Members in active service "who shall become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty" are eligible for DDR. MCC § 36-05-3. This particular DDR plan pays to the recipient 75% of the current annual salary and all salary adjustments authorized for the position, as well as health insurance coverage. See MCC § 36-05-3-c-1-c.
¶ 9. Officers Teriaca and Jasso contend that their DDR benefits should be reinstated because the Board's stance, that a police officer remains eligible for DDR only if the disability is caused by a work-related injury, was incorrect. Both claimants first seek to overturn the Board's decision on the grounds of issue preclusion. Alternatively, Teriaca and Jasso claim that the wording of MCC § 36-05-3-c, establishing the circumstances in which a DDR recipient can be restored to active duty, supports their position that a disability from a non-work-related injury is sufficient to continue DDR. Further, Teriaca and Jasso contend their terminations from DDR deny them a contractual, statutory and constitutionally-vested right. Finally, they argue that insufficient evidence was presented to support the Board's decisions.
¶ 10. We determine that the application of the issue preclusion doctrine to these types of proceedings is inappropriate. Thus, we look to the language of the *841 retirement act. We conclude the phrase "fit for service" is ambiguous. In harmonizing the phrase with other ordinances touching on the City's retirement plans, we determine that the intent of DDR is to allow only those with a work-related disability to remain on duty disability retirement. Further, no contractual, statutory or constitutional right has been violated, and sufficient evidence exists to support the Board's decisions that Teriaca's and Jasso's disabilities are non-work-related.
A. Issue Preclusion
[3]
¶ 11. Both Teriaca and Jasso urge this court to apply the rules of issue preclusion and require the Board to follow earlier circuit court decisions interpreting the "fit for service" language. The officers submit that the scope of review of a medical reexamination under MCC § 36-05-3-c-1-b has already been resolved in Ferrill v. City of Milwaukee, Milwaukee Employes' Retirement System/Annuity & Pension Board, Milwaukee County Circuit Court No. 99-CV-8795 (1999), and Lofquist v. City of Milwaukee, Milwaukee Employes' Retirement System/Annuity & Pension Board, Milwaukee County Circuit Court No. 00-CV-004887 (2001). In Ferrill and Lofquist, the trial court restored the duty disability retirement benefits of the appellants in those cases, concluding that language in MCC § 36-05-3-c-1-b obligated the courts to do so. Teriaca and Jasso assert that all of the elements for the application of the issue preclusion doctrine are found here.
[4,5]
¶ 12. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually *842 litigated and decided in the prior action." Northern States Power Co. v. Bugher, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995). The general rule on issue preclusion is: "When an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action . . . whether on the same or a different claim." Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank, 224 Wis. 2d 288, 301, 592 N.W.2d 5 (Ct. App. 1998) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).
[6,7]
¶ 13. However, any application of the issue preclusion doctrine must comport with principles of fundamental fairness. See Precision Erecting, 224 Wis. 2d at 304. The Supreme Court has adopted a five-factor fundamental fairness test. See id. at 305. A court may consider some or all of the following factors when making the decision to invoke issue preclusion:
(1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment;
(2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
(3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;
(4) have the burdens of persuasion shifted such that a party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or
(5) are matters of public policy and individual circumstances involved that would render the application *843 of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?
Id. at 305 (citations omitted).
[8]
¶ 14. Whether courts may apply issue preclusion presents a question of law, which we review independently of the trial court. See Michelle T. v. Crozier, 173 Wis. 2d 681, 686, 495 N.W.2d 327 (1993). We decline to apply the issue preclusion doctrine here.
¶ 15. In refusing to apply issue preclusion, we expand our previous holding in Gould v. DHSS, 216 Wis. 2d 356, 576 N.W.2d 292 (Ct. App. 1998), where we refused to apply the doctrine of issue preclusion to state administrative agencies, see id. at 370, to include boards administrating pensions and annuities. As we noted in Gould:
[C]ourts ha[ve] long recognized in various contexts that the government is not in the same position as a private litigant, both because of the geographic breadth of government litigation and the number and nature of the issues the government litigates, making it more likely that the government, as opposed to a private litigant, will be involved in litigation against different parties that, nonetheless, involve the same legal issues.
Id. at 368-69 (citing United States v. Mendoza, 464 U.S. 154, 159-60 (1984)).
¶ 16. In Gould, we adopted the Mendoza rationale for refusing to apply issue preclusion against the federal government. The Mendoza court reasoned that applying issue preclusion against the government would: (1) "thwart the development of important questions of law by freezing the first final decisions on a particular legal issue[;]" and (2) force the government "to abandon its *844 policy of balancing many factors in deciding whether to appeal adverse rulings, leading to appeals of every adverse decision." See Gould, 216 Wis. 2d at 369.
¶ 17. The Gould reasoning applies equally well here. The Board's position as a litigant is sufficiently similar to that of an administrative agency and significantly different from that of a private litigant, such that the economy of interests underlying a broad application of issue preclusion does not justify the application of the doctrine against the Board. The Board should not be forced to follow decisions with different facts and different circumstances from those present here. As the Teriaca trial court aptly observed:
The court is not persuaded that the doctrine of issue preclusion applies here. While Ferrill did involve the Board as a party, and the Board had the opportunity to appeal the decision, other factors are more compelling. The individual circumstances of a person seeking judicial review of the termination of her duty disability benefits are documented in the administrative record. The medical records and physician reports, as well as the recommendations of the medical panel and the hearing examiner are unique to each individual. The Ferrill court made a determination that, based on the specific facts in the administrative record, the Board had impermissibly gone outside the scope of review. That is, the decision addressed a mixed question of fact and law. This court does not have the opportunity to review and compare the records in the two matters. Further, where both parties are not the same, or the facts giving rise to the matter are not identical, this court is not bound by the decision of another branch of the circuit court.
Because we decline to apply the issue preclusion doctrine, we now address the disputed language's meaning.
*845 B. Ordinance Interpretation
[9]
¶ 18. The Board removed Teriaca and Jasso from DDR because their most recent medical examinations revealed that they were no longer disabled by their employment injuries, although they were unable to return to full-duty police work because of other medical conditions or injuries. The disputed issue in these combined appeals revolves around the following language found in MCC § 36-05-3-c-1-b:
Case Review. In the event a member receiving a duty disability retirement allowance is later determined to be fit for service he [or she] shall be restored to service in his [or her] department and he [or she] shall no longer be entitled to receive a duty disability retirement allowance.
(Emphasis added.) Teriaca and Jasso submit that, under the "fit for service" standard, a recipient continues to be eligible for DDR even if the recipient no longer suffers from the original work-related disability. They contend that because they are not "fit for service," even though they no longer have the original work-related disability, the Board erred in removing them from the ranks of DDR recipients. Thus, the scope of our review touches on the second question found in the Ruthenberg test  did the Board act according to law? See Ruthenberg, 89 Wis. 2d at 472.
[10-14]
¶ 19. Teriaca and Jasso maintain the words "fit for service" are not ambiguous. When interpreting an ordinance, the rules of statutory construction are used. See Schroeder v. Dane County Bd. of Adjustment, 228 Wis. 2d 324, 333, 596 N.W.2d 472 (Ct. App. 1999). If the language of the ordinance is clear, then this court *846 applies the language to the facts of the case. Id. When the language is ambiguous, the court resorts to judicial construction to ascertain and carry out the legislature's intent. See Village of Shorewood v. Steinberg, 174 Wis. 2d 191, 201, 496 N.W.2d 57 (1993). "A statute is ambiguous if reasonably well-informed persons could understand it in two or more ways." Id. Once a determination has been made that the ordinance is ambiguous, the court may examine the history, context, subject matter, scope, and object of the ordinance. Id. at 202.
[15-17]
¶ 20. Other rules speak to our obligations when engaging in statutory construction. First, a court "must apply statutes so that every word is given meaning and effect." Wisconsin Patients Comp. Fund v. Physicians Ins. Co. of Wis., Inc., 2000 WI App 248, ¶ 10, 239 Wis. 2d 360, 620 N.W.2d 457. Courts should also read the entire statute together and harmonize its parts. See Walag v. Town of Bloomfield, 171 Wis. 2d 659, 665, 492 N.W.2d 342 (Ct. App. 1992). Finally, courts are obligated to read and interpret statutes so as to avoid absurd results. Id. at 663.
¶ 21. Here, we are satisfied the "fit for service" phrase is ambiguous. Our review of the language and the context in which it is found leads us to conclude that the phrase is ambiguous. Since DDR pensions are awarded only when a member "become[s] permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty," does the ordinance's wording assume that the retiree has no other disabilities? See MCC § 36-05-3-a. Or, should the phrase be read literally to mean that any disability permits one to continue on DDR? These perplexing questions convince us that "reasonably well-informed *847 persons could understand it in two or more ways." Village of Shorewood, 174 Wis. 2d at 201.
¶ 22. In deciphering what the ordinance means, we find the Board's argument most persuasive:
The only interpretation which gives "meaning and effect" to the medical exam process, as well as the other language in the applicable provisions (secs. 36-05-3-c, 36-05-3-c-1-a, 36-05-3-c-1-b, MCC), is that the medical exam is for the purpose of determining if the work-related injuries have subsided, and if the work injuries have subsided such that the retiree is fit for service on the basis of his [or her] work-related injuries, his [or her] duty disability ceases and he [or she] is restored to active service in the department. Moreover, limiting the inquiry of whether the retiree is "fit for service" to whether the retiree has recovered from his work-related disabling injury harmonizes not only the provisions in Ch. 36, MCC, relating to duty disability, but also with other provisions of Ch. 36, MCC.
¶ 23. The clear intent of the retirement plan is to offer those employees disabled while performing service for the City a better pension than those disabled for other reasons. Compare MCC § 36-05-2 with MCC § 36-05-3. MCC § 36-05-2 provides for an ordinary disability retirement plan which requires no showing that the injury is work-related. If the work-related injury requirement is interpreted as proposed by Teriaca and Jasso, then there is no distinction between those retirees who suffer from a non-work-related disabling injury or condition, and those who have recovered from their work-related injury or condition but continue to be disabled by their non-work-related injury or condition; yet, those retirees on ordinary disability are paid substantially less than those on DDR. The clear intent of the plan is to distinguish between those who continue to be disabled as the result of a *848 work injury and those who have other disabilities that prevent them from rejoining the work force. To decide otherwise would be unfair to others on DDR, as well as to those on ordinary disability pensions, and render the plans absurd.
¶ 24. As the independent hearing examiner in both cases reasoned, the provision permitting reexamination does not state that "the examining process is solely for determining if an employee can qualify for full duty." Rather, the hearing examiner surmised that because MCC § 36-05-3-a, authorizing DDR benefits, speaks of a member "who shall become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place," the periodic reevaluations are intended to "ascertain if specific work related injuries continue to incapacitate a recipient of the benefits, presumably with the view that if they do not, then the benefits cease."
¶ 25. The examiner concluded that to interpret the ordinance's language "fit for service" to mean only "fit for full duty," without consideration of whether the recipient continues to be disabled as a result of a work-related injury "is to vitiate and nearly empty the meaning and effect of MCC 36-05-3-a and 36-05-3-c-1-a." We agree. The Board's interpretation of the ordinance, that Teriaca and Jasso were no longer eligible for DDR benefits because their work-related injuries had subsided, resulting in their being fit for service as a consequence, is correct. Thus, the Board properly terminated Teriaca and Jasso from the ranks of DDR recipients.
*849 C. Contractual, Statutory and Constitutional Rights
[18]
¶ 26. Teriaca and Jasso argue that the termination of their DDR is a violation of their contractual, statutory, and constitutionally-vested rights. They submit that they have a vested right in their pension benefits and, pursuant to MCC § 36-13-2-e, the Board is prohibited from changing the retirement rules from those in place at the time of their hire.
¶ 27. MCC § 36-13-2-e provides, in relevant part:
No application nor interpretation of the provisions of this act or rule of the board shall be either effected, instituted or promulgated retroactively or applied in such a manner as to such member, retired member or beneficiary so that it results in any form, in the diminution, loss or partial loss or reduction of any credit, benefit or retirement allowance to which such person was or is entitled because of prior interpretation or application of the provisions of this act or rule whether general or specific. The protection, safeguarding and the security of the rights, benefits and allowances expressed in this subsection are and shall be deemed fully vested, contractual and binding upon the employer and guaranteed by it.
¶ 28. While we agree that Teriaca and Jasso have a vested right in their pensions and the City's ordinances forbid changing the rules, we disagree with their contention that the Board has either changed the rules or attempted to relitigate the initial disability award to cure a prior mistake. Their argument basically rehashes their other contentions. They argue that since "fit for service" has already been determined by trial courts in other cases, the "ordinance does not allow the Board to relitigate the issues determined in the initial *850 disability award or to cure an alleged mistake, as the Ferrill and Lofquist courts held."
¶ 29. Teriaca and Jasso have developed no argument to sustain their constitutional challenge. Further, their DDR pension was granted subject to an annual medical examination and termination if they were found no longer eligible. They no longer have their originating work-related disabilities. The Board has maintained the same position concerning DDR throughout the duration of their pension periods. This is not a situation where the Board has changed the rules or regulations. Consequently, no contractual, statutory or constitutional violation has occurred.
D. Sufficient Medical Proof
[19-22]
¶ 30. Finally, Teriaca and Jasso claim insufficient evidence was presented to sustain the Board's determinations that they no longer had work-related injuries. In reviewing the sufficiency of the evidence to determine whether the Board properly terminated a DDR pension, this court applies the substantial evidence test. See Harris, 87 Wis. 2d at 652. Applying the substantial evidence test, we must affirm the Board's findings "if they are supported by any credible and substantial evidence in the record, even if they are contrary to the great weight and clear preponderance of the evidence." Hoell v. LIRC, 186 Wis. 2d 603, 612, 522 N.W.2d 234 (Ct. App. 1994). This court cannot substitute its judgment for that of the Board regarding "the weight or credibility of the evidence on any finding of fact." Currie v. DILHR, 210 Wis. 2d 380, 387, 565 N.W.2d 253 (Ct. App. 1997). Rather, it is the function of this court to "examine the record for credible and substantial evidence which supports the agency's determination." Id.
*851 ¶ 31. The record provides ample evidence to sustain the Board's determinations that Teriaca and Jasso were no longer disabled as a result of work-related injuries.
¶ 32. Two of the three doctors who most recently examined Teriaca opined that their examinations revealed no physical basis for her complaints of pain. Teriaca has never had any surgery since returning to DDR in 1991, and she also has had no medical treatment for her injuries or complaints. Even the third examining doctor believed that Teriaca's condition had improved, but differed with the other two doctors because he felt Teriaca was unable to work full-time. The two doctors' opinions were supported by the fact that Teriaca has been working limited duty since her DDR termination. Moreover, the Board's conclusion that Teriaca's complaints of pain were not credible because of Teriaca's inconsistent pattern of pain, combined with her failure to seek any medical treatment and the total lack of objective evidence to support her complaints, was reasonable. Thus, the Board properly terminated her DDR.
¶ 33. Two of the three doctors on Jasso's medical panel certified that he was no longer incapacitated for duty as a result of his work injuries. Although the third doctor recommended Jasso be continued on duty disability retirement, the doctor made his recommendation based on Jasso's other non-work-related medical problems, not his work-related injuries. As the Board advances in its brief:
The fact that respondent has full range of motion of his left knee and left elbow, no orthopedic abnormality of either the left knee or left elbow, full grip strength of both arms, full strength in the lower extremities and no evidence of any neurological problems clearly supports *852 the conclusions of Dr. Seter and Dr. Aschliman that respondent is no longer incapacitated for work because of his work injures to his left elbow and left knee.
¶ 34. The Board's finding that Jasso was no longer suffering from a work-related injury was supported by the evidence. Consequently, we affirm both of the Board's terminations.
By the Court.Order affirmed; order reversed.
NOTES
[2] The Board was established by Chapter 396 of the Laws of 1937, the provisions of which have been codified in Chapter 36 of the Milwaukee City Charter. This chapter provides retirement benefits to MERS's members, including employees of the City of Milwaukee.
[3] WISCONSIN STAT. § 68.09 provides:

Review of determination. (1) INITIAL DETERMINATION. If a request for review is made under s. 68.08, the determination to be reviewed shall be termed an initial determination.
(2) WHO SHALL MAKE REVIEW. A review under this section may be made by the officer, employee, agent, agency, committee, board, commission or body who made the initial determination. However, an independent review of such initial determination by another person, committee or agency of the municipality may be provided by the municipality.
(3) WHEN TO MAKE REVIEW. The municipal authority shall review the initial determination within 15 days of receipt of a request for review. The time for review may be extended by agreement with the person aggrieved.
(4) RIGHT TO PRESENT EVIDENCE AND ARGUMENT. The person aggrieved may file with the request for review or within the time agreed with the municipal authority written evidence and argument in support of the person's position with respect to the initial determination.
(5) DECISION ON REVIEW. The municipal authority may affirm, reverse or modify the initial determination and shall mail or deliver to the person aggrieved a copy of the municipal authority's decision on review, which shall state the reasons for such decision. The decision shall advise the person aggrieved of the right to appeal the decision, the time within which appeal shall be taken and the office or person with whom notice of appeal shall be filed.